## VOLUNTEER STATE LIFE INS. CO. v. SUMNER et ux.

### No. 4254.

Court of Civil Appeals of Texas. Amarillo.

June 25, 1934.

Rehearing Denied Sept. 17, 1934.

Davidson, Doss & McMahon, of Abilene, for appellant.

Lockhart & Brown, of Lubbock, for appellees.

HALL, Chief Justice.

The appellees, O. W. Sumner and wife, Edna, sued the Volunteer State Life Insurance Company on January 28, 1933.

The first count of the petition is a formal suit in trespass to try title to recover the east 40 feet of lot 11 and the west 20 feet of lot 10 in block 26 of the Overton addition to the city of Lubbock. They alleged the rental value of the premises to be $500.

By the second count they allege in substance that the property constituted their homestead; that on or about the 25th day of November, 1929, they executed and delivered to the Southern Investment Company, hereinafter designated as the Southern Company, seven promissory notes: No. 1 in the sum of $200, due November 1, 1930; No. 2 in the sum of $250, due November 1, 1931; No. 3 in the sum of $300, due November 1, 1932; No. 4 in the sum of $350, due November 1, 1933; No. 5 in the sum of $400, due November 1, 1934; No. 6 in the sum of $450, due November 1, 1935, and No. 7 in the sum of $1,750, due November 1, 1936. They bear interest from date until maturity at the rate of 6 per cent., payable semiannually on the 1st days of May and November, respectively, in each year until maturity, and contain the usual optional acceleration and attorneys' fees clauses.

The substance of the allegations we briefly state as follows: That, contemporaneously with the execution of said notes, the appellees executed and delivered to James F. Holliday, trustee for the Southern Company, a deed of trust conveying said property, and on the same date and at the same time they executed and delivered to the Southern Company five notes, the first for $60, due May 1, 1930, the second $82.50, due May 1, 1931, and the third, fourth, and fifth in the sum of $82 each,

due May 1, 1932, 1933, and 1934, respectively. They allege that said last-named notes did not represent any money actually advanced by the Southern Company to them, but represented a part of the agreed interest on the first series of notes. That, contemporaneously with the above-named instruments, a second deed of trust conveying the same property was executed to the Southern Company securing the last-mentioned interest notes. That the contract in its entirety was usurious. That, prior to the execution of the instruments described, it was agreed between the appellees and the Southern Company that the former should immediately take up the five notes last above described by paying the sum of $233.10, and, on the same day the deeds of trust were executed and the sum of $3,700 was advanced to them, they paid the Southern Company the sum of $233.10, and that the Southern Company then canceled and delivered the said five interest notes, executing a release of the same to appellees. That, under and by virtue of the agreement and contract, the appellees actually paid as interest to the Southern Company during the first year in which the contract was in force interest at a greater rate than 15 per cent. per annum. Wherefore they were entitled to have all payments made by them credited on the principal of said loan. That thereafter the Volunteer State Life Insurance Company, hereinafter designated as the Volunteer Company, became the owner of the notes secured by the first lien, and acquired the same with full notice and knowledge of all the facts surrounding the transaction when said notes and deeds of trust were executed, and had both actual and constructive notice thereof. That the total amount of payments made by appellees is $870.16, and on January 3, 1933, they were not in default in their payments, but on said date E. H. Henderson, as substitute trustee, executed and delivered to appellant his deed conveying to it the property above described in satisfaction of the indebtedness claimed to be due from appellees. Appellees alleged their willingness to do equity in the premises, and offered to pay whatever the court might determine to be due from them on January 3, 1933, or at any time thereafter, on their indebtedness. They further set up the depressed financial condition of the country, alleged that they had offered to refinance their property through the Home Loan Bank, a government agency, and prayed that the court set aside the said trustee's sale and give them an opportunity to refinance their home indebtedness.

The appellant, the Volunteer Company, answered by general demurrer, a plea of not guilty, and, by cross-action in trespass to try title, prayed for the recovery of the property and asked for the appointment of a receiver.

The case was tried to the court without a jury, and resulted in a judgment declaring the contract between appellees and the Southern Company to be usurious and void as to all interest. It was further adjudged that, in making the contract, the Southern Company was acting as the agent of the Volunteer Company in refinancing in part a then indebtedness which O. W. Sumner owed the Volunteer Company, that the Volunteer Company was itself a party to the usurious contract, and in acquiring the contract acted with actual notice and knowledge of the fact that it was usurious, and that Sumner's wife had theretofore paid to the Southern Company the sum of $233.10 as interest represented by the second series of notes described in the second deed of trust. The judgment further recites, in part, as follows: That Sumner and wife paid a total of $870.16 to the appellant and the Southern Company, that the seven notes securing the principal obligation are void as to the interest stipulation therein, and that the total payments of $870.16 should be credited on the principal debt, and, after making such credits upon notes 1, 2, and 3, they would be absorbed, leaving a balance which was credited on note No. 4, due November 1, 1933, $120.16, leaving a balance due thereon in the sum of $229.84. The court further finds that there was nothing past due on the indebtedness at the time of the execution of the trustee's deed on January 3, 1933, and that said deed is therefore void, and decreed that appellees should have the title and possession of the property. The judgment further removes the cloud occasioned by the trustee's sale from the title, and abates all interest stipulated for in the principal notes.

The findings are incorporated in the judgment, and no specific assignment of error is urged against them. We have decided, however, to consider the contentions urged by the appellant.

There is a stipulation in the record to the effect that Sumner paid to the Southern Company the sum of $233.10 as evidenced by his check; that afterward the Southern Company transferred and assigned the first deed of trust and the series of notes described therein to the Volunteer Company, and that Sumner made payments to the Volunteer Company, as follows: May 27, 1930, $85.58 as

interest; November 1, 1930, $111.00 as interest; February 11, 1931, $100 as principal; April 18, 1931, $107.88, $100 of which was paid on principal and the remainder as interest; November 17, 1931, $107.60 on interest; February 20, 1932, $75; and June 13, 1932, $50.

It is conceded that the notes described in the second deed of trust amounting to $233.10 represented interest upon the loan, and this amount was paid to and retained by the Southern Company. The record shows that prior to this transaction the Volunteer Company held a deed of trust upon the property involved herein to secure an indebtedness due it from one Snyder, a former owner of the property, and it is conceded that the transaction out of which this litigation arose was negotiated and consummated for the purpose of discharging the Snyder indebtedness and substituting Sumner and his obligations for the prior debt. The contention of the appellees is that throughout the transaction the Southern Company acted as the agent of the Volunteer Company, and that it received the $233.10 by way of compensation for its services in refinancing the Snyder debt. This contention is amply supported by the testimony, the result of which, of course, is to charge the Volunteer Company with notice of all the details of the transaction. Clyde Weaver, the secretary of the Southern Investment Company, testified that at the time of this transaction the Volunteer Company owned a loan due from Fred Snyder, the amount of the indebtedness being $3,150; that the matter of negotiating the loan with Sumner with the view of refinancing the Snyder debt had been put up to the Volunteer Company a considerable time prior to its consummation with Sumner. Mather, the treasurer of the Volunteer Company, wrote Holliday, the president of the Southern Investment Company, on November 14, 1929, as follows: "The refinancing of this loan in the amount of $3700.00, seven years, at six per cent, has received the approval of our Finance Committee. We wired you to this effect this morning as you requested." Weaver testified that it was the custom of his company with reference to negotiating loans to submit the proposed borrower's application first to some life insurance company which they expected to take up the paper and to get their approval before ever a commitment on the loan was made, and that this loan was negotiated in that way. It was shown that no money changed hands in the transaction other than the payment to the Southern Investment Company by Sumner of the $233.10 represented by the notes he had executed as interest obligations. It further appears that the Volunteer Company paid out no money except about $400

advanced for taxes, and that "it merely adjusted the loan on its books."

Weaver testified that none of the $3,700 represented by the notes secured by the first mortgage was ever paid to Sumner. What is called a commitment was introduced in evidence addressed to J. E. Murfee & Sons at Lubbock and referring to the O. W. Sumner loan $3,700. This is signed by Holliday as president of the Southern Investment Company, notifying Murfee & Son that his company had approved the loan for $3,700, 6 per cent. and 1½ per cent. payments to be made as follows: (Here follows a description of the notes described in the first mortgage); "Second mortgage: May 1, 1930, $60.00; May 1 1931, $82.50; May 1, 1932, $82.00; May 1, 1933, $82.00; May 1, 1934, $82.00." It further recites that the loan would be applied as follows: Balance due on principal, $3,150 (the Snyder debt); interest to November 1, $94.50; interest November 1st to December 1st, $15; paving $245.88; interest on paving note, $17.91; taxes, $176.71; total, $3,700. December 5, 1929, J. F. Bork, chief clerk of the Volunteer Company, wrote the Southern Investment Company, acknowledging the receipt of the following papers in connection with the O. W. Sumner loan "which is being refinanced on basis of $3,700.00. Seven principal notes aggregating $3,700.00; partial release and assignment of the present loan to the Southern Investment Co. Receipt from County Clerk showing that new deed of trust for $3700.00 has been filed for record on Nov. 29, 1929. As soon as our attorney has approved papers in the new loan we will return the executed assignment to your office together with check covering the difference due on this adjustment." Weaver admitted receiving the check. A letter was introduced dated December 18, 1929, from Bork, chief clerk of the Volunteer Company, to the Southern Investment Company, as follows: "Gentlemen: In accordance with your letter December 2nd, we have had the assignment of the above loan to the Southern Investment Company executed on the part of this Company. At the time adjustment of this loan is completed and the new papers sent to us, we will return to you the four principal notes aggregating $3150.00. We are enclosing copy of letters from our title attorney dated Dec. 14th as information." Weaver stated that the $3,150 referred to represented the Fred Snyder indebtedness, and the record shows that prior to December 18th, the date of this letter, the second mortgage to secure the interest notes was on record, and the correspondence between the parties demonstrates that the Volunteer Company had before it, prior to the

time it accepted the new notes, a record of all of the proceedings in connection with the transaction.

The letters further tend to show that the Southern Company throughout the negotiations and in consummating the transaction was acting as the agent of, and under the directions of, the Volunteer Company, and for that reason is chargeable with notice of the fact that Sumner had paid $233.10 in advance as interest on the $3,700 loan before the instruments representing the loan were actually received by it on December 18th.

A consideration of all the circumstances as disclosed by the correspondence and the testimony of Weaver is sufficient to show that the Southern Company was never at any time the real owner of any of the evidences of debt or liens executed to secure them. On November 25, 1929, Sumner and wife executed both deeds of trust, which were acknowledged and filed for record in Lubbock county on that date. All notes bear the same date, as does the check from Sumner to the Southern Company for $233.10 representing his first payment of interest. The release of the second deed of trust is executed and acknowledged by the Southern Company December 5, 1929, and filed for record on December 7th, following. The $3,700 note and first deed of trust were transferred by the Southern Company to the Volunteer Company on December 5, 1929, and filed for record in the office of the county clerk of Lubbock county on the following day. As to Sumner, the transaction was closed on November 29th, and the Southern Company's connection with the transaction ended on December 5th, when it released the second deed of trust and transferred the first mortgage and notes to the Volunteer Company.

■ We cannot assent to the appellant's contention that the testimony fails to sustain the court's judgment and findings upon the issues of notice, actual and constructive.

■ However, the general rule is that, when a note is tainted with usury, it is, in virtue of the language of the statute, void as to all interest even in the hands of a bona fide purchaser before maturity. R. S. art. 5071, provides that all written contracts whatsoever which may in any way directly or indirectly provide for a greater rate of interest than 10 per cent. per annum on the amount of the contract shall be void and of no effect for the amount or value of the interest.

As said in Temple Trust Company v. Stobaugh (Tex. Civ. App.) 59 S.W.(2d) 916, there can be no innocent purchaser of a usurious note either before or after maturity. Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031; Maloney v. Elaheart, 81 Tex. 281, 16 S. W. 1030; State Bank of Chicago v. Holland, 103 Tex. 267, 126 S. W. 564.

■ The record shows that, at the time the trustee sold the property in question under the power contained in the deed of trust, the first three notes aggregating $750 were past due and unpaid if the payments hereinbefore recited could be credited to the extinguishment of interest, but the rule is established in this state that, where payments are made by the borrower upon an usurious loan contract, the law will apply such payments to the discharge of the principal debt. Temple Trust Co. v. Stobaugh, supra; International B. & L. Ass'n v. Biering, 86 Tex. 476, 25 S. W. 622, 26 S. W. 39; Cain v. Bonner, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874; Cotton v. Cooper (Tex. Com. App.) 209 S. W. 135; Yonack v. Emery (Tex. Com. App.) 13 S.W.(2d) 667, 70 A. L. R. 684.

■ The second proposition urged by the appellant, to the effect that, because the appellees permitted the property to be sold by the substitute trustee without objection and without tendering the amount due, they cannot in a proceeding in trespass to try title question the validity of the sale or successfully attack the title acquired by the purchaser in the absence of any irregularity which would void the sale.

This would be true if at the time of the sale the appellees were in default as to any part of the valid debt.

The leading case of Hemphill v. Watson, 60 Tex. 679, announces the rule that a purchaser at trustee's sale made under a mortgage with power of sale executed to secure both principal and interest on a contract which is usurious obtains title if the principal sum due was not tendered before the sale, and declares that the debtor cannot afterwards procure a cancellation of the sale by offering to pay the principal sum due.

After crediting the payments made in the instant case as required by law to the extinguishment of principal rather than to discharging usurious interest, it appears that no part of the principal debt was due at the time of the sale, and these authorities have no application.

We find no reversible error in the record, and the judgment is affirmed.