## NOBLE v. CARLTON, Governor of Florida, et al.

District Court, S. D. Florida.    January 4, 1930.

### No. 639.

William E. Kay and Thomas B. Adams, both of Jacksonville, Fla. (Kay, Adams, Ragland & Kurz, of Jacksonville, Fla., on the brief), for plaintiff.

Fred H. Davis, Atty. Gen., of Florida, for defendants.

Before BRYAN, Circuit Judge, and BORAH and JONES, District Judges.

JONES, District Judge. The plaintiff in this case, a citizen of the state of Georgia, filed a bill of complaint in this court naming as defendants the Governor of the State of Florida and other state officials, the sheriff of Duval county, Fla., and the chief of police of the city of Jacksonville, Fla., seeking, by amended bill, to declare unconstitutional certain provisions of chapter 13696, Laws of Florida 1929; an interlocutory injunction against said defendant officials restraining them severally from enforcing any of the provisions of said chapter 13696, Laws of Florida 1929, or any rules or regulations promulgated by the Commissioner of Agriculture of the State of Florida in pursuance thereto; and that upon final hearing the injunction be made permanent.

The case was heard by this court of three judges upon the prayer for an interlocutory injunction as provided for in section 266 of the Judicial Code (28 USCA § 380).

Chapter 13696, Laws of Florida 1929, by its title, is: "An act to Define and Regulate the Sale of Milk and Cream in the State of Florida, and Provide for the Enforcement of the Regulations Made Under This Act." It provides by its terms that it shall be construed as intended—to secure to the people of

Florida the assurance that milk and cream offered for sale is produced under sanitary conditions fixed by the state of Florida and is offered under a label that discloses its grade, quality and place of production. It prescribes certain standards of milk and cream that may be sold in the state of Florida, and exempts from its provisions " * * * producers of milk in Florida who produce and dispose of the milk from five cows or less, by sale or otherwise, in such county where such milk is produced." Section 2. It requires that all persons shipping or selling milk in Florida shall cause same to be labeled so as to advise purchasers or consumers of the nature and kind of milk offered and "the State or County in which same was produced." It prohibits the repasteurization of any milk and the mixing of milk produced in one state with that of another.

The act further provides: "Section 6. It shall be unlawful for any person, firm, association or corporation, except the initial producer doing business in the State of Florida, to receive, offer for sale, transport, prepare or deliver for transportation or sale, as milk processors or dealers, any milk or cream, * * * without first obtaining from the Commissioners of Agriculture a State License as a dealer in milk and cream. * * * "

It fixes a penalty of a fine of not more than $5,000. or imprisonment in the county jail for not more than twelve months.

The amended bill of complaint alleges that this statute is unconstitutional, in that, among other things, it violates the Commerce Clause of the Constitution; the provisions of the Eighth Amendment to the Constitution, by imposing excessive fines; and the Fourteenth Amendment, by denying plaintiff the equal protection of the law and by taking his property without due process of law.

In support of these allegations the plaintiff contends: " * * * That under this law the dairymen of other states and the dairy products of other states, are not when reaching the State of Florida treated upon the same basis as the dairymen or dairy products of the State of Florida; that the law creates obstructions to the transportation and sale of the dairy products of other states into the State of Florida, and creates discriminations against the producers and products (of other States) not existing as regards Florida dairymen and Florida dairy products." The answer of certain of the defendants denies this and alleges the same restrictions, and no others, are placed upon all dairymen and dairy products selling or offered for sale in the state of Florida.

The objections stressed by plaintiff at this hearing are:

1. The exemption of producers in Florida having five cows or less is arbitrary and does not protect the public health.

2. That it requires plaintiff to take out a license before he can ship his milk into Florida, which is a burden upon interstate commerce.

3. That it requires plaintiff to label his milk to show it was produced in Georgia, thereby making it impossible for his products to compete with those produced in Florida.

4. That it imposes excessive penalties.

■ It will be conceded that the state of Florida, in the exercise of its police power, has the right to protect the public health and safety by legislative enactment, provided the same be reasonable and does not infringe any right granted or secured by the Constitution of the United States. Boston Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989; New Orleans Gaslight Co. v. Louisiana Light Co., 115 U. S. 650, 6 S. Ct. 252, 29 L. Ed. 516; Crowley v Christiensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620; Jacobson v. Massachusetts, 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765; Lieberman v. Van De Carr, 199 U. S. 552, 26 S. Ct. 144, 50 L. Ed. 305; Engel v. O'Malley, 219 U. S. 128, 31 S. Ct. 190, 55 L. Ed. 128.

■ The objection that the exemption of producers from five cows or less is a discrimination in favor of such producers, and thereby deprives the plaintiff of the equal protection of law, has been passed upon by the Supreme Court of the United States in Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160, wherein the rules governing the question of class legislation are laid down as follows:

"1. The equal protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

"2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain

it, the existence of that state of facts at the time the law was enacted must be assumed.

"4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

See also Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829; Heath & Milligan Manufacturing Co. v. Worst, 207 U. S. 338, 28 S. Ct. 114, 52 L. Ed. 236; Ozan Lumber Co. v. Union County National Bank, 207 U. S. 251, 28 S. Ct. 89, 52 L. Ed. 195.

A reasonable ground for this exemption will be found in the fact that the owner of five cows or less would not produce sufficient milk to engage in the production and sale thereof as a business, but might produce more than sufficient to meet his own requirements, and in selling his surplus to his neighbors in the same county could safely do so without the necessity of complying with regulations provided for persons producing in large quantities for sale at points remote from their domicile. This classification or exemption is not unreasonable, and is therefore not in violation of the Fourteenth Amendment. Lindsley v. Natural Carbonic Gas Co., supra, and cases therein cited.

■ There is some controversy over the construction of that portion of section 6 of the act requiring a license. The plaintiff construes the act to mean that before he can transport his milk from Georgia into Florida he must have a license, while the defendants in their answer aver that the statute does not mean this, but only applies to milk and dairy products arriving in interstate commerce after they have been delivered to the original consignee and which come within the rule known as the "coming to rest doctrine." In other words, the defendants contend that the act does not require of plaintiff a license to bring his milk into the state of Florida, and by their answer aver that none has been or will be required, but that such license is required only of processors or dealers handling such milk after delivery to the original consignee.

The statute is susceptible of the construction placed thereon by these officials upon whom devolves the enforcement of the law. In any event, under these conditions no harm will come to this plaintiff, and he is not, therefore, in a position to complain of this provision. Williams et al. v. Riley, 280 U. S. 78, 50 S. Ct. 63, 74 L. Ed. ——, decided by the Supreme Court November 25, 1929.

■ The point that the act in requiring milk to be labeled to show place of production is in violation of the Fourteenth Amendment is not well taken. The act is general in this requirement and applies to milk produced in Florida as well as in other states. In Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182, the Supreme Court of the United States upheld a statute of Indiana regulating the sale of concentrated feed for stock, which provided: "Any person, company, corporation or agent that shall sell * * * any * * * commercial feeding stuff in this state, shall affix, * * * thereof, a tag or label * * * [having] plainly printed thereon in the English language, * * * the name of the manufacturer, [and] the location of the principal office of the manufacturer. * * *" Acts Ind. 1907, c. 206, § 2. The suit was brought by a citizen and producer of the state of Minnesota. Certainly if a state may require a manufacturer of feed for stock to label same to show place of manufacture, it may require a similar label upon food intended for consumption by human beings.

■ The cases of Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, and Missouri Pacific Railroad Co. v. Tucker, 230 U. S. 340, 33 S. Ct. 961, 964, 57 L. Ed. 1507, relied upon by plaintiff to sustain his allegations of unconstitutionality upon the ground of excessive penalties, are railroad rate cases, and the laws and orders therein attacked are quite different from chapter 13696, Laws of Florida 1929. The distinction is clearly pointed out in each case. In Ex parte Young, at page 148 of 209 U. S., 28 S. Ct. 449, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, the court says: "The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation, and over which the jurisdiction of the legislature is complete in any event."

The decision in Missouri Pacific Railroad Co. v. Tucker is based upon the ground that: "The imposition of $500 as liquidated damages is not only grossly out of proportion to the possible actual damages, but is so arbitrary and oppressive that its enforcement would be nothing short of the taking of property without due process of law, and therefore in contravention of the 14th Amendment."

No such provision is contained in the Florida statute under consideration. The penalties therein provided make it within the

discretion of the trial court to impose a fine as small as $1. This certainly could not be considered excessive.

As it has not been made to appear that any constitutional rights of this plaintiff have been infringed by this law or that irreparable injury will result to him therefrom, an order will be entered denying this application for an interlocutory injunction.