**CULVER et al. v. SMITH et al.**

No. 8142.

Court of Civil Appeals of Texas. Austin.

July 21, 1934.

Rehearing Denied Sept. 17, 1934.

Amended Motion for Rehearing Overruled Sept. 17, 1934.

Ocie Speer and Hart, Patterson & Hart, all of Austin, and Mayfield & Grisham, of Tyler, for appellants.

Jas. V. Allred, Atty. Gen., and Neal Powers, Asst. Atty. Gen., for appellees.

BLAIR, Justice.

George L. Culver instituted this proceeding seeking to restrain the members of the Railroad Commission, the Attorney General, and certain district and county attorneys from enforcing what is commonly known as House Bill No. 99, enacted by the Second Called Session of the 43d Legislature (chapter 45 [Vernon's Ann. Civ. St. art. 6049c, § 5]), because the act was alleged to be in contravention of certain provisions of both the State and Federal Constitutions. Others intervened as plaintiffs, and upon final hearing a general demurrer was sustained to the pleadings of plaintiff and interveners, and, upon their declining to amend, their respective petitions were dismissed; hence this appeal in which we will discuss the questions from the standpoint of the pleadings of Culver, they being typical.

House Bill No. 99 was enacted in substance and form as follows:

"H. B. No. 99.

"An Act amending Section 3, Chapter 2, Acts Forty-second Legislature, Fourth Called Session, requiring all persons, companies, or corporations producing, storing, trans-

porting, refining, reclaiming, treating, marketing, or processing crude oil or natural gas, to keep accurate records pertaining to their business; authorizing and requiring the Railroad Commission of Texas to inquire into the facts in regard to such matters, or any of them; authorizing the Railroad Commission to require such persons to make and file with the Commission sworn statements or reports as to such facts; authorizing the Railroad Commission and its agents to inspect or gauge the wells, plants, tanks, or lines belonging to or under the control of such persons, companies, or corporations, and to examine the books and records of such persons, companies, or corporations; providing that the information thus secured shall not be available for any private use but shall be restricted to the use of any governmental agency, making this Act cumulative of existing laws and providing it shall not repeal the same; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Section 3, Chapter 2, Acts Forty-second Legislature, Fourth Called Session, be, and the same is hereby, amended so that it shall hereafter read as follows:

" 'Section 3. The Railroad Commission shall have the power, and it shall be its duty from time to time, to inquire into the production, storage, transportation, refining, reclaiming, treating, marketing, or processing of crude oil and/or natural gas, and the reasonable market or consumer demand therefor, in order to determine whether or not waste exists or is imminent, or whether the conservation laws of Texas or the orders of the Railroad Commission are being violated. It shall be the duty of all persons, companies, or corporations producing, storing, transporting, refining, reclaiming, treating, marketing, or processing crude oil or natural gas, to keep accurate records as to the amount of such products produced, stored, transported, refined, reclaimed, treated, marketed, or processed by such person, company, or corporation; and as to the source from which such person, company, or corporation has produced, obtained, or received crude oil, natural gas, or the products of either, and the disposition made of same. The Commission shall have the right to require all such persons, companies, or corporations to make and file with the Commission sworn statements or reports as to facts within their knowledge or possession pertaining to the production,

storing, transportation, refining, reclaiming, treating, marketing, or processing of crude oil or natural gas and the reasonable market or consumer demand therefor, including those facts enumerated herein; and to require any well, plant, tank, or storage, or pipe line, or gathering line, belonging to or under the control of any such person, company or corporation, to be inspected or gauged by the agents of the Commission whenever and as often and for such periods as the Commission may deem necessary; and the Commission and its agents may likewise examine the books and records of any such person, company, or corporation as often as deemed necessary for the purpose of ascertaining the facts concerning the matters and things hereinabove set forth. The data, reports, and information obtained and received hereunder shall not be available for any private use of public circulation, but shall be available to any State governmental agency.'

"Sec. 2. This Act shall not repeal any existing law not inconsistent therewith but shall be considered to be cumulative of the same.

"Sec. 3. The fact that the Railroad Commission under court decisions probably does not at this time have jurisdiction over certain of the businesses and companies mentioned in this Act, which fact seriously handicaps the enforcement of the conservation laws of this State, creates an emergency and an imperative public necessity that the Constitutional Rule, requiring bills to be read on three several days in each House, be, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

Culver alleged that he was the owner of two crude oil refining plants located in Upshur county, Tex., within the Gladewater area of what is commonly known as the East Texas Oil Field; and as the owner and operator of said oil refining plants he was engaged in purchasing crude oil and refining same, and in the sale of the by-products manufactured from said crude oil in said locality; that House Bill No. 99 contravened the Fourth Amendment of the Constitution of the United States and section 9 of article 1 of the Texas Constitution, inhibiting unreasonable searches and seizures; and that unless restrained the Railroad Commission and its agents, and the other appellees, would, under color of authority of said House Bill No. 99, do the things and commit the acts therein attempted to be authorized, and

would attempt to enforce and assess the fines and penalties prescribed for the violation of the provisions of the act, to the irreparable injury of appellant.

No contention is made that appellees were attempting to do any act or thing not authorized by the act, but it is contended that the provisions of the act itself contravene the Fourth Amendment to the Constitution of the United States, and particularly section 9 of article 1 (Bill of Rights) of the Texas Constitution, which declares that "the people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." Nor is it contended that the business of producing and refining crude oil is not one which is the appropriate object of governmental regulation under the state's police power in order to conserve these natural resources; but appellants contend that the vice is in the act itself, as follows:

"House Bill No. 99 is necessarily obnoxious to the provision of the Bill of Rights quoted, for the reason that it authorizes absolutely, without limit, qualification or regulation whatsoever, the Commission and its agents to examine the books, and records of any person, company, or corporation coming within the purview of the Act as often as deemed necessary for the purpose of ascertaining the facts concerning the matter and things in said Act set forth. There is no limitation whatever as to time when such examinations sought are to take place, or when once begun, how long they are to continue; nor is there any requirement whatever that there shall exist a cause for such examination, or that there shall exist grounds for a belief on the part of the Commission or its agents of the existence of grounds or probable cause for such examination.

"In truth the Act specifically authorizes such examination as often as deemed necessary, thus making the Commission the sole judge of its right, and the sole arbiter at its discretion to invade the security of the people in their houses, papers and possessions and to make any and all searches and seizures it may deem necessary for the purposes of the Act. * * *

"In truth, so vicious is the Act that it does not even require that the search and seizure therein authorized be reasonable. So far as the Act is concerned, the Commission is authorized to make any unreasonable search and seizure, limited only to its own notion of whether or not such search and seizure are necessary to carry out the purposes of the Act."

■ We do not interpret the act as authorizing the absolute, unlimited, or unreasonable examination of the books and records required to be kept; nor the unreasonable inspection of the properties therein described. In interpreting the act to determine whether it confers arbitrary or unreasonable power, it must be considered in the light of the broader powers exercised by the Commission in the regulation of the petroleum industry under the Conservation ♦ Laws. When so considered the act simply provides that the Commission do the acts or things required when "deemed necessary" and as often as deemed necessary in the enforcement of the Conservation Laws, thus invoking the administrative discretion of the Commission. By the term "administrative discretion" is meant that the acts or things required to be done may be reached, in part at least, upon the basis of considerations not entirely susceptible of proof or disproof and at times which, considering the circumstances and the subject-matter, cannot be supplied by the Legislature itself. A statute is said to confer such discretion when it refers the commission or officer for the exercise of the power to beliefs, expectations, tendencies instead of facts, the commission or officer being usually instructed to act, or to do the things required when deemed "fit," "proper," "appropriate," "practicable," "necessary," "reasonable," or like terms. This discretion includes all matters or things in which the ascertainment of a fact is legitimately left to administrative discretion, which enlarges as the element of future probability preponderates over that of present conditions, the fundamental purpose of an administrative power or regulation being to fill up details which arise in the course of the performance of the act or duty specified or required. United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253; Freund On Administrative Powers Over Persons and Property, 71.

The act in question leaves to the administrative discretion of the Commission, charged with the duty of enforcing the Conservation Laws, the matter of determining when and how often it may be deemed necessary to examine the books and records required to be kept and to inspect the properties de-

scribed, which acts or things arise in the course of the administration of the Conservation Laws, and are details which arise in connection therewith. Manifestly the Legislature could not know when it might become necessary for the Commission to examine the books and records and to inspect the properties described of crude oil refineries as an aid to the enforcement of the Conservation Laws, and it therefore left such matters of detail to the administrative discretion of the Commission.

■It is admitted by appellants that the crude oil refinery business is one subject to the regulatory provisions of the statute; such business being a part of the petroleum industry of this state. It therefore follows that the provisions of the act for examining and inspecting powers are legal, because they relate to matters and things which may be legitimately left to administrative determination and discretion, and are enabling powers in aid of the broader administrative powers exercised by the Commission in the enforcement of the Conservation Laws. But appellants say that the act itself is vicious because it does not use the word "reasonable" in defining the examining and inspecting powers conferred. This contention is not tenable for two reasons: In the first place, the act clearly authorizes the examination of the books and records required to be kept as public records and to inspect the properties described, and even in absence of the word reasonable, or its equivalent, the law will presume that the Commission and its agents will reasonably exercise the powers conferred. Appellants do not allege that appellees are attempting to execute the examining and inspecting powers conferred in an arbitrary or unreasonable manner; but merely allege that unless restrained they will, "under color of said House Bill No. 99, do the things and commit the acts therein attempted to be authorized." We have found no authority, and none is cited, holding that a statute which confers examining and inspecting powers upon an administrative commission or officer of a business subject to regulation is violative of the clauses of the State and Federal Constitutions inhibiting unreasonable searches and seizures, because such statute does not instruct the commission or officer to perform the acts or things required in a reasonable manner. In fact, the courts have uniformly held that they have jurisdiction to review the acts of such a commission or officer, and to require that the discretionary powers conferred be not exercised arbitrarily or unreasonably, and such court decisions fully protect appellants should the Commission or its agents undertake to exercise the examining and inspecting powers conferred by the act in an arbitrary or unreasonable manner.

■ In the second place, the act requires that the Commission, or its agents, do the acts and things specified only when "deemed necessary" and "as often as deemed necessary." As hereinbefore pointed out, the term "necessary" and the term "reasonable" are used interchangeably in statutes which confer administrative discretion upon an administrative commission or officer. The plain import of the language instructing the Commission to examine and inspect when "deemed necessary" and "as often as deemed necessary," is that it must perform the acts and things specified in a reasonable manner; and there is nothing in the language of the act which would authorize the Commission, or its agents, to obtain data and documents in an unauthorized manner, or in an unreasonable or unlawful manner. The foregoing is a reasonable interpretation of the language used in the act, and it must be so interpreted under the familiar rule often invoked, that where the language of an act is susceptible of a construction which will render it constitutional, it will be given that interpretation rather than one which will render it unconstitutional.

■ Appellants make the statement in their briefs that the constitutional security against unreasonable search and seizure is reserved against any legislation, even in the exercise of proper police power. By this statement we do not understand appellants to contend that the crude oil refinery business is not subject to regulation under the Conservation Laws, and in aid of which the act in question was passed. However, in support of the statement they cite and quote extensively from authorities which denounce statutes and acts of officers as being violative of the search and seizure clause sought to be invoked. An examination of these cases distinguishes them from the instant case, because they relate to purely private papers and businesses and to the search of purely private property; while the act in question relates to a business which is subject to regulation, and which under the act is being regulated by the government in aid of its Conservation Laws; the act simply requiring that persons or companies engaged in such business shall make certain reports, keep certain books and records for examination, and that certain properties shall be subject to inspection. This distinction between purely

private papers, books, and records, and purely private property, and business or property subject to regulation and control by the state under its police power, and in aid of its Conservation Laws, renders the cases cited not in point. The rule that the constitutional inhibition against unreasonable search and seizure extends to purely private papers, as distinguished from records required to be kept as public records, or for inspection by administrative commissions or officers, by a business subject to governmental regulation, is clearly stated by Mr. Justice Hughes in the case of Wilson v. U. S., 221 U. S. 361, 31 S. Ct. 538, 544, 55 L. Ed. 771, Ann. Cas. 1912D, 558, as follows: "The principle (lack of immunity) applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained."

See, also, the following cases which are analogous with regard to the right of governmental regulation of certain businesses, and which hold, in substance, that the books, papers, documents, and data pertaining to lawfully regulated businesses may be examined, or required to be produced, and that the properties of such businesses may be inspected in the reasonable regulation of same where affected with the public interest; and that such requirements do not amount to unreasonable search and seizure as inhibited by the Fourth Amendment of the United States Constitution, and section 9 of article 1 of the State Constitution: Baltimore & O. R. Co. v. I. C. C., 221 U. S. 612, 31 S. Ct. 621, 55 L. Ed. 878; Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 S. Ct. 436, 56 L. Ed. 729; U. S. v. Smull, 236 U. S. 405, 35 S. Ct. 349, 59 L. Ed. 641; U. S. v. Morehead, 243 U. S. 607, 37 S. Ct. 458, 61 L. Ed. 926; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; U. S. v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986; Bartlett Frazier Co. v. Hyde (C. C. A.) 65 F. (2d) 350; Wilson v. U. S., 221 U. S. 361, 31 S. Ct. 538, 542, 55 L. Ed. 771, Ann. Cas. 1912D, 558; U. S. v. First Nat. Bank of Mobile (D. C.) 295 F. 142, affirmed 267 U. S. 576, 45 S. Ct. 231, 69 L. Ed. 796; Karr v. Baldwin (D. C.) 57 F.(2d) 252; Hughes v. State, 67 Tex. Cr. R. 333, 149 S. W. 173; Interstate Forwarding Co. v. Vineyard (Tex. Civ. App.) 3 S.W.(2d) 947; Silverthorne Lumber Co. et al. v. United States of America, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426.

It may also be observed here that the only distinction between the case quoted from, and the cases therein cited, and the instant case, is that the records required to be kept by the appellants are not for public inspection under specific terms of the act, but are books and records required to be kept for the benefit of the public, and for the examination and inspection of the state's administrative commission, or its agents, in the performance of their duty in the administration or enforcement of the Conservation Laws relating to the petroleum industry.

But appellants say that the act does not properly define the right to search or seize based upon probable cause without warrant; or that the right to search shall pertain to or be incident to a charge or proceeding of any kind pending or prospective against the person whose premises are to be searched, or against any other person.

■ The Legislature in the act itself made the legislative finding that the imperative necessity existed for the reasonable regulation of the crude oil refinery business; and made the further legislative finding that, in the regulation of such business and as an aid to the enforcement of the Conservation Laws, an imperative necessity existed requiring that the person or company operating such a business should make certain reports, keep certain books and records pertaining thereto for examination by the Commission or its agents; and that the necessity existed requiring the inspection of certain property by the Commission, or its agents, in the performance of their larger duty of enforcing the Conservation Laws. These legislative findings are conclusive, absent pleadings that they were unwarranted and arbitrary, and no such allegations are made.

■ Again in this connection appellants cite and quote from authorities which hold statutes violative of the unreasonable search and seizure clauses sought to be invoked, but the statutes construed related to private books and papers, or to the search of private property. Such cases have no application here, because the business in question is affected with the public interest, and subject to reasonable regulation by the government; and as hereinabove stated the act involved does not require an unreasonable regulation of the crude oil refinery business. The constitutional provisions sought to be invoked do not prohibit all searches or seizures, but only

such as are "unreasonable"; and the general rule as to probable cause for the exercise by the Commission of the examining and inspecting powers conferred by the act in question is stated in Wilson v. U. S., supra, as follows: "But there is no unreasonable search and seizure when a writ, suitably specific and properly limited in its scope, calls for the production of documents which, as against their lawful owner to whom the writ is directed, the party procuring its issuance is entitled to have produced."

In the instant case the statute in question is suitably specific and properly limited in scope with respect to the exercise of the examining and inspecting powers conferred, and is the legislative mandate to the administrative commission to perform the duty of ascertaining the facts necessary to a proper regulation of the crude oil refinery business as a part of the petroleum industry of this state, the act simply invoking the administrative discretion of the Commission to do the acts or things required or specified.

■ Appellants further contend that the penalties of "not more than One Thousand Dollars ($1,000.00) for each and every day of such violation" of any provision of the act as provided in article 6036, as amended by Acts of the 42d Legislature, 1st Called Session, c. 26, § 3 (Vernon's Ann. Civ. St. art. 6036), render the act void as being in contravention of section 13 of article 1 of the Texas Constitution, in that it imposes excessive fines and authorizes unusual punishment, and as being in contravention of section 19 of article 1 of the Texas Constitution, and of section 1 of article 14 of the Amendments to United States Constitution, in that it permits and authorizes the deprivation of their property without due course of law, and of their liberty without due process of law. We do not sustain these contentions.

The penalty statutes prohibit the Commission from adopting any order or regulation under the Conservation Laws, except upon 10 days' notice and after hearing; and there are also statutory provisions for the vacation of any invalid order or regulation upon appeal to a court of competent jurisdiction in Travis county. Article 6036a, and article 6036b, as amended by Acts of the 41st Legislature, page 694. Thus the Legislature has provided for the full protection of the constitutional rights of appellants. The following cases settle the questions raised against the contentions of appellants, holding with regard to similar statutes and penalties, that where the statutes afford both a hearing before the Commission before the promulgation of an order or regulation, or access to the courts to test the validity of such order or regulation, penalty provisions such as the one in question are not prohibited by the constitutional provisions sought to be invoked by appellants: Wadley Southern Ry. Co. v. Georgia, 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405; Atlas Pipe Line Co. v. Sterling (D. C.) 4 F. Supp. 441; U. S. v. Clyde S. S. Co. (C. C. A.) 36 F.(2d) 691; Noble v. Carlton, Governor of Florida, et al. (D. C.) 36 F.(2d) 967. The fact that article 6036 imposes a penalty of "not more than one thousand dollars per day" instead of a flat penalty of $1,000 per day, thus permitting the imposition of a small penalty of perhaps only a few cents per day, has been held to be sufficient within itself to take such statute out of the constitutional inhibitions sought to be invoked by appellants. Noble v. Carlton, Governor of Florida, et al. (D. C.) 36 F.(2d) 967.

■ Appellants also contend that House Bill No. 99 is void as being in contravention of section 30 of article 3 of the Texas Constitution, which provides that "no law shall be passed, except by bill." By this contention appellants seem to insist that the act should have been formally labeled, "A Bill To Be Entitled." The constitutional provision does not so provide; but merely requires that the law shall be passed by "Bill." The act in question meets every prerequisite of a "Bill." We have quoted the act in full, and it is labeled, "H. B. No. 99," which is the accepted abbreviation of House Bill No. 99. Thus it is labeled a bill, and the contention made by appellants is at least technical, and is not sustained.

■ By their fourth and remaining assignment of error, appellants contend that their refinery businesses are not within the scope and purview of the Conservation Laws of Texas, because, since oil, when recovered from the land and reduced to possession and control, ceases to be a part of the natural resources of the state, and becomes a commodity or article of commerce and not subject to the regulations attempted by the act.

Appellants do not allege that they are engaged in commerce; but that they are engaged in mining and manufacturing, which is not commerce. That is, they allege that they are engaged in purchasing crude oil and refining it, and in the sale of the by-products so manufactured, all in Upshur county, Texas, in the "locality" of the Gladewater area of the East Texas Oil Field. Thus it

is shown that appellants do not allege any facts which would constitute commerce; and the Legislature, under the police power of this state, had the authority to regulate the crude oil refinery business, such business being a part of the petroleum industry of this state, and within the scope and purview of the Conservation Laws of this state.

We find no error in the judgment of the trial court, and it will be affirmed.

Affirmed.