**RAILROAD COMMISSION et al. v. OIL REFINERIES, Inc.**

No. 8359.

Court of Civil Appeals of Texas. Austin.

July 27, 1935.

Wm. McCraw, Atty. Gen., and W. J. Holt and Wm. Davis, Asst. Attys. Gen., for appellants.

McGown & McGown and Harry L. Logan, Jr., all of Fort Worth, for appellee.

BAUGH, Justice.

This case arose as follows: On February 9, 1935, the appellee filed with the tender department of the Railroad Commission on form SW–4, prescribed by the commission, tender applications for permission to ship 4,914 barrels of gasoline, 2,457 barrels of fuel oil, 1,229 barrels of kerosene and/or distillate, and 1,228 barrels of gas oil and/or distillate, all located in the tanks of appellee, in Overton, Rusk county, Tex., in the East Texas oil field. These tenders were rejected by the tender board, on the ground that the oil from which said products were manufactured by appellee was purchased by appellee from Murray Reclamation Plant under false pretenses. The appellee thereupon sought in the district court of Travis county a temporary injunction against the Railroad Commission, its agents, etc., to restrain them from interfering with appellee's sale and transportation of said products. The appellant Railroad Commission filed its plea in abatement, alleging that it was a department of the state government, and that as to it the suit was one against the state, brought without the consent of the state, and that the crude oil from which said products were manufactured was illegally produced and was purchased by appellee under a forged tender which gave to appel-

lee no right to sell and transport same. The trial court sustained the plea in abatement, dismissed the Railroad Commission from the suit, and granted the injunction prayed for against the other defendants. Notwithstanding this, however, the Railroad Commission has appealed from such temporary injunction.

The judgment of the trial court, as evidenced by the recitals thereof, was based upon the finding that appellee, in the purchase of the oil from which said products were manufactured, exercised reasonable diligence in its endeavor to ascertain whether the oil so purchased was legal oil, that it acted in good faith in the purchase of such oil, and that the commission failed to prove that the tender under which appellee purchased such oil had been forged, or that the alteration thereof had been made without the consent of the members of the Railroad Commission.

It is not controverted that appellee in the purchase of said oil acted in good faith without knowledge of the alleged forged or altered tender under which it purchased said oil. It is true that the best evidence rule was not observed in proving such forgery; yet we do not understand appellee to seriously contend that such forgery or alteration was not, in fact, made. The evidence admitted without objection, though some of it should have been excluded had objection been made, was clearly sufficient, we think, to show the following: The altered tender in question, that is, the one on which appellee purchased 10,238 barrels of crude oil from Murray Reclamation Plant, originally made on form E–N–3 prescribed by the commission, was regularly approved by the duly authorized agents of the Railroad Commission on 8/6/34, was given serial No. 2095–3, and the so-called original thereof filed with the commission at its office in Kilgore. This tender in its original form as approved by the commission was made by the Kraco Pipe Line Company and authorized delivery by it to the Lake Refining Company of 6,138 barrels of crude oil. Such oil was shown to have been actually delivered to the Lake Refining Company under such tender. Subsequent thereto the copies which should have been delivered to the tenderer and the tenderee thereof, but which seem not to have been so delivered, were by some unknown person—whom, the parties here concerned, both appellant and appellee, after diligent search, were unable to locate—altered by erasing the name

"Kraco Pipe Line Co." and inserting in its place, "Oil Refineries, Incorporated," by erasing the name "Lake Refining Co." and inserting that of "Murray Reclamation Plant," by erasing "6138" barrels and inserting "10238" barrels, and by making other minor changes. These changes were so skillfully made as to avoid detection on the face of said instrument, except by very careful scrutiny. It is not controverted, however, that a comparison of such copies with the original on file in the offices of the Railroad Commission would have readily disclosed the alterations; but such steps do not appear to have been customary in the purchase or transportation of oil unless facts existed arousing suspicion in the particular case. The result, therefore, was that such tender, after it had served its purpose in the first instance, was fraudulently altered and used to effectuate a sale and delivery of 10,238 barrels of additional oil between entirely different parties. Whether the oil so sold and delivered by the Murray Reclamation Plant to appellee was in fact legally produced is not shown.

■ That the Railroad Commission had authority under the conservation laws to prescribe these forms and require their execution before such oil could be sold and transported is now settled. Culver v. Smith (Tex. Civ. App.) 74 S.W.(2d) 754; State v. Blue Diamond Oil Corporation (Tex. Civ. App.) 76 S.W.(2d) 852, 853; Railroad Commission v. Tyler Texas Oil & Refining Co. (Tex. Civ. App.) 80 S.W.(2d) 500. Under the law, appellee was not entitled to purchase, sell, or transport crude oil, or the products thereof, unless it showed that same was legally produced. Acts 1934, 3d Called Sess., 43rd Leg., c. 64, p. 120 (Vernon's Ann. Civ. St. arts. 6049c, § 14, 6036 and note). It follows, therefore, that the forms prescribed by the commission under its orders of December 5, 1934, and February 1, 1935, when properly executed by such applicant, containing the required information verified under oath, and bearing approval of the authorized agent of the commission, are in their nature public records evidencing property rights in the hands of the legal holder thereof in and to the property therein described. And these so-called copies, when duly approved by the proper agency of the commission, are as much originals as that filed with the commission in its offices as a part of the records. Davenport et al. v. Railroad Commission (Tex. Civ. App.) 85 S.W.(2d) 661. As such they are clearly subject to the laws against forgery and susceptible of being forged. 26 C. J. 918. And fraudulently altering the material terms of same after issuance without the knowledge and consent of the commission would clearly constitute forgery. 26 C. J. 901, 922. Such forgery renders the instrument void, even in the hands of a bona fide holder. 2 Tex. Jur. § 5, p. 697, and cases there cited. Even if the rule provided by statute as to negotiable instruments—that is, that the innocent holder thereof could enforce it according to its original tenor—could be applied in this case, still it would avail nothing, for the reason that the oil covered by such original tender had already been sold and delivered under it.

■ In brief, the situation presented is merely this: Appellee must show that the oil from which it manufactured the products it seeks to move was legally produced before it was entitled to the tender it seeks. The only evidence of that fact presented was that it purchased same under a duly approved tender, which was shown to have been forged. This constituted no proof that said crude oil was legal. It undoubtedly relied in good faith upon the validity of such forged tender. But, under the law and well-established line of decisions, though it may have been mulcted by its vendor and hardship worked upon it, it now appears well settled that it acquired no rights under such forged instrument that it can enforce against the commission by injunction. If, however, appellee can show that the oil it bought, even though it relied upon a forged tender, was in truth and in fact legally produced, it will then be the duty of the commission to grant the tender applied for. The interest of the Railroad Commission in the matter extends only to a proper enforcement of the conservation laws.

■ It was also clearly error for the trial court to sustain said plea in abatement and dismiss the Railroad Commission from said suit. While the tenders involved were not signed by the commission itself, they are the acts of the commission performed through the designated agencies; and under the conservation laws themselves, an interested party dissatisfied with the orders of the commission is authorized to bring suit in Travis county against the Railroad Commission, to test the validity of such order. Article 6049c, Vernon's Ann. Civ. Statutes as variously amended. See, also, Railroad Commission v. Texas Steel Co. (Tex. Civ. App.) 27 S.W.(2d) 861; Magnolia Petrole-

um Co. v. Edgar (Tex. Civ. App.) 62 S.W. (2d) 359.

For the reasons stated, the judgment of the trial court is reversed; the temporary injunction granted by the trial court is dissolved; the temporary injunction heretofore granted by this court on May 22, 1935, is dissolved; and the cause remanded to the trial court for trial upon its merits.

Judgment reversed; temporary injunctions dissolved; cause remanded.