## DYER v. RAILROAD COMMISSION OF TEXAS et al.

### No. 8651.

Court of Civil Appeals of Texas. Austin.

Feb. 23, 1938.

Rehearing Denied March 30, 1938.

John Davenport and J. E. Hall, both of Wichita Falls, and Felts, Wheeler & Wheeler, of Austin, for plaintiff in error.

Wm. McCraw, Atty. Gen., and W. J. Holt, Wm. C. Davis, Charles M. Kennedy, Earl Street, Joe Sharp, Harry S. Pollard, and Marvin Trevathan, Asst. Attys. Gen., for defendant in error Railroad Commission.

S. W. Marshall and Herbert W. Whisenant, both of Dallas, for defendant in error Republic Nat. Bank of Dallas.

McCLENDON, Chief Justice.

Dyer, doing business under the tradename of Ozozo Refining Company, brought this suit against the Railroad Commission, seeking injunctive relief authorizing the shipment of 160,000 barrels of products and by-products of crude petroleum oil in the East Texas Field. The state, through the Attorney General, intervened, and sought confiscation of the property on the ground that it had been produced in excess of the allowable, and was therefore contraband. Various parties alleged to claim some interest in the property were made parties, including the Republic National Bank of Dallas. In a trial to the court without a jury, judgment was rendered denying Dyer the relief he sought and granting the relief sought by the state, confiscating the oil, and ordering it sold. It is stated in the briefs that the property has been sold under this judgment and the money deposited in the registry of the court to abide the final disposition of the case. The appeal (by writ of error) is by Dyer alone.

The bank has filed a separate brief, in which it asks that the trial court's judgment be reformed so as to protect it as holder of a mortgage on the property assertedly superior to the state's right to confiscate. This it predicates upon the proposition that its mortgage was created in September, 1934, at a time when oil products not in possession of the original processor were legal in the hands of an innocent holder, regardless of the source of the oil from which they were produced; and its rights could not be affected by subsequent acts of the mortgagor. We have reached the conclusion that the bank's position in this regard is not tenable.

Additionally, it may be seriously questioned whether the products in issue are the same property as that covered by the bank's mortgage; the latter relating to crude oil and not oil products.

However this may be, the bank has no standing in this court, as it has not appealed from the trial court's judgment. Detroit F. & S. Co. v. State, 124

Tex. 145, 76 S.W.2d 492; Temple Trust Co. v. Haney, Tex.Civ.App., 103 S.W.2d 1035. The rule here invoked is thus stated in 3 Tex.Jur. p. 873: "The appeal by appellant does not give the court jurisdiction to consider cross-assignments by one appellee as against a coappellee."

The major portions of the briefs are devoted to discussion of constitutional questions. Dyer makes several contentions with reference to the validity of the proration and tender orders of the Commission and he statutes under which these orders were made. We will pretermit discussion of these questions as they have all been foreclosed by prior decisions. See Danciger O. & R. Co. v. Railroad Comm., Tex. Civ.App., 49 S.W.2d 837; Culver v. Smith, Tex.Civ.App., 74 S.W.2d 754; State v. Blue Diamond O. Corp., Tex.Civ.App., 76 S.W.2d 852. The main attack upon the proration orders relates to procedural matters in connection with their promulgation. The orders are clearly valid upon their face. They cannot be brought in question in this proceeding, which constitutes a collateral attack. Railroad Comm. v. Marathon Oil Co., Tex.Civ.App., 89 S.W.2d 517, error ref.; Falvey v. Simms Oil Co., Tex. Civ.App., 92 S.W.2d 292, 293.

The judgment of the trial court held the property contraband on the grounds: (1) That it had been illegally produced; and (2) that it had been illegally transported. It is asserted in Dyer's brief that the only factual support of the judgment is the asserted illegal transportation, and that this assertion is not supported because the movement relied upon did not constitute transportation within the meaning of the statute, but was merely for the purpose of storage. As will be noted later, there is a conflict in the evidence as to whether the products in question were in fact those which Dyer claims were moved for storage. Independently of this issue, however, the state did not plead illegal transportation; nor did it contend in the trial court that the property was contraband on that ground. This issue, therefore, need not be considered further. We confine the opinion to the issues presented relating to the state's contention that the property in question was produced in excess of the allowable.

It will be recalled that on December 5, 1934, the Commission passed an order requiring filing on or before December 20, 1934, of an inventory of all oil and oil products on hand in the East Texas Field

on December 10, 1934. A subsequent order required inventory as of February 1, 1935. Products not in the hands of the original processor acquired in good faith prior to December 10, 1934, were held not to be contraband, regardless of the source of the oil from which produced. See Railroad Commission v. Tyler Texas Oil & Refining Co., Tex.Civ.App., 80 S.W.2d 500, and other cases decided by this court on the same day and reported in the same volume. Railroad Comm. v. Real, 80 S.W. 2d 494, Railroad Comm. v. Burnham, 80 S. W.2d 496, Railroad Comm. v. Linzie Ref. Co., 80 S.W.2d 504, Railroad Comm. v. Archer, 80 S.W.2d 506, Railroad Comm. v. Bradshaw, 80 S.W.2d 508, Railroad Comm. v. Primrose Pet. Co., 80 S.W.2d 509, Railroad Comm. v. Phoenix Ref. Co., 80 S.W. 2d 510. It is the contention of Dyer that the property in question was oil products not processed by him, but purchased and held by him in good faith on and prior to December 10, 1934. The state's contention, on the other hand, is that Dyer's contention (1) was not sustained; and (2) was negatived by the evidence. The validity of these contrary contentions constitute the controlling issue in the case.

The manner in which the case is presented by the briefs has made it necessary for us to read the entire statement of facts, which is quite voluminous. We have found it difficult to follow the testimony of a number of witnesses; but believe the following résumé of the controlling facts is fairly deducible from the evidence:

Dyer filed an inventory under the December, 1934, order, in which he showed that he had on hand on December 10, 1934, products amounting to 141,290 barrels. He filed a further inventory as of February 1, 1935, showing that he then had on hand 171,000 barrels of products. This was made up of products on hand December 1, 1934, 141,290, injunction products purchased 49,479, total 190,769, less deliveries 19,436, burned as fuel 333, total deduction 19,769; balance on hand 171,000. Various employes of the Commission testified that certain tanks in which these products should have been stored were empty on certain dates. To meet this testimony Dyer's witnesses testified that in February, 1935, 164,000 barrels were transported for storage partly on the Atlas property and partly on leases or storage under control of Dyer; and that these products were moved back into the original storage in March, 1935. The movement was through the pipes of

the Atlas Company, a common carrier. The state showed that the February movement by the Atlas Company was under an injunction issued by a special district court of Rusk county, and that the property was shipped to Arkansas. The state further showed that the only authority given by the Commission for movement for storage was in August, 1935, and that the products so moved were under the direction of the Commission and were placed in storage and the tanks sealed with Commission seals; and that this property was not moved back to the original storage. Dyer objected to the evidence with reference to the Arkansas shipment, asserting that the products moved under the injunction were not the products in issue. Dyer's books covering his operations under the Ozozo trade-name were examined by an auditor of the Commission covering the period September 1, 1934, to August, 1935. These books showed a balance of products on hand December 31, 1934, of 118,054 barrels. Purchases and sales during January, 1935, reduced this amount by 12,628 barrels, and in February, 1935, by an additional 110,000 barrels. In other words, by March 1, 1935, according to the books of the Ozozo Company, it had disposed of all the products it had on hand December 31, 1934. There was no effort on the part of Dyer to refute these facts, other than by testimony of his witnesses that the 160,000 barrels in issue was on hand on December 10, 1934, was moved into other storage through common carrier lines in February, 1935, and moved back to the original storage in the same manner in March, 1935. Comment upon the above factual showing is unnecessary. The state clearly established its case that the products in question were illegal and subject to confiscation; and the trial court's finding and judgment to that effect were amply supported. It should also be noted that Dyer applied for tender on January 25, 1935, for 79,649 barrels of topped crude. This is the only tender for which he applied until during the trial in the lower court. This latter tender is not in evidence. We make this statement not as having any controlling bearing on the case, but merely as showing the discrepancy between the amount of products, tender for which he applied, and the amount he sought to move under a judgment of the trial court.

The trial court's judgment is affirmed.

Affirmed.

## On Motion for Rehearing by Plaintiff in Error.

We deem it essential only to note that in our analysis of the testimony and conclusions therefrom we were mindful of the fact that as regards the state's cross-action the burden of proof rested upon it to support its allegation that the oil in question was illegally produced. The testimony of some of appellant's witnesses that the oil consisted of products on hand prior to December 5, 1934, was contradicted by other facts and circumstances in evidence, of a most persuasive and convincing nature, as set forth in our original opinion. Whatever the burden resting upon the state, we hold that it was amply met.

The constitutional questions reiterated in the motion are more fully discussed in our opinion this day handed down in *Skipper-Bivens Oil Company v. State,* 115 S.W.2d 1016.

The motion is overruled.

Overruled.