William G. BLAIR, D.C., Appellant,

v.

TEXAS EMPLOYMENT COMMISSION, Appellee.

No. 8321.

Court of Civil Appeals of Texas, Amarillo.

March 19, 1973.

Rehearing Denied April 16, 1973.

Lewis P. Terrell and Buford C. Terrell, Lewis P. Terrell, Lubbock, for appellant.

Crawford C. Martin, Atty. Gen., Stephen W. Hollahan, Austin, for appellee.

JOY, Justice.

This is an appeal from an order requiring William G. Blair to produce his employment and payroll records into court for inspection by the Texas Employment Commission. Affirmed.

The TEC issued an administrative subpoena ordering Blair to present all employment and payroll records for a designated period of time to a representative of the Commission at a designated time and place. Blair appeared at the time and place designated and claimed that any books and records concerning employment and payroll were privileged under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution as the records might have a tendency to incriminate him. Blair further offered to produce the records required by Article 5221b–9(h) [1] at such time as he was granted immunity from prosecution, penalties and forfeitures based upon any information which might be contained in such records. Thereafter the Attorney General of the State of Texas filed an application and affidavit under Article 5221b–9(g) in the 72nd District Court of Lubbock County, Texas, requesting the court to order Blair to produce the requested records. A hearing was had in the district court and thereafter the court ordered Blair to produce his employment and payroll records within 30 days. From this order Blair has perfected this appeal.

Whether or not Blair, who does not deny being classified as an employing unit under Article 5221b–9, can be compelled to produce those employment and payroll records required to be kept under the same article, is the sole point for determination. Upon review of the general case law we find that the courts have developed what is referred to as the "required records" doctrine. This rule or doctrine is an exception to the general rule that no individual shall be required to incriminate himself by the requisition of his books and records, provided, of course, that the danger of incrimination must be real and appreciable and not of an imaginary, remote and unsubstantial character. See Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1885). In Shapiro v. United States, 335 U.S. 1, 17, 68 S.Ct. 1375, 1384, 92 L. Ed. 1787 (1947), the United States Supreme Court cited with approval the following language from Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911):

" '. . . the physical custody of incriminating documents does not of itself

---

1. All references to articles are to Vernon's Annotated Civil Statutes.

protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege. . . . The principle applies not only to public documents in public offices, but also to *records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers, cannot be maintained.'*"

Also, at page 32 of *Shapiro*, 68 S.Ct. at page 1391 we quote the following:

"It may be assumed at the outset that there are limits which the government cannot constitutionally exceed in requiring the keeping of records which may be inspected by an administrative agency and may be used in prosecuting statutory violations committed by the record-keeper himself. But no serious misgiving that those bounds have been . overstepped would appear to be evoked when there is a sufficient relation between the activity sought to be regulated and the public concern so that the government can constitutionally regulate or forbid the basic activity concerned, and can constitutionally require the keeping of particular records, subject to inspection by the Administrator."

In Culver v. Smith, 74 S.W.2d 754 (Tex.Civ.App.—Austin 1934, writ ref'd), wherein the plaintiff sought a restraining order against the Texas Railroad Commission from enforcing provisions of Article 6049c that required the keeping of records in regard to the oil and gas industry with the Commission having the right to examine the records, the court upheld the act and further distinguished between purely private records and those records of a public nature required by an administrative agency. At pages 758–759 of *Culver* the court stated:

". . . This distinction between purely private papers, books, and records, and purely private property, and business or property subject to regulation and control by the state under its police power, and in aid of its Conservation Laws, renders the cases cited not in point."

\* \* \* \* \* \*

"See, also, the following cases which are analogous with regard to the right of governmental regulation of certain businesses, and which hold, in substance, that the books, papers, documents, and data pertaining to lawfully regulated businesses may be examined, or required to be produced, and that the properties of such businesses may be inspected in the reasonable regulation of same where affected with the public interest; and that such requirements do not amount to unreasonable search and seizure as inhibited by the Fourth Amendment. . . ." (citing cases)

We are of the opinion and so hold that the Texas Unemployment Compensation Act in providing, inter alia, for the collection of taxes from certain employers, and for the further purpose of paying unemployment compensation to those workers that are unemployed involuntarily, is of such a public nature and is concerned with the public welfare generally to the extent that the Commission may properly require the keeping of the records involved here and the production of same for inspection. No employer coming within the act may frustrate the purpose thereof by merely refusing to produce the required records on the grounds that he may be incriminated thereby.

We affirm the judgment of the trial court.