## TEMPLE TRUST CO. v. STOBAUGH.
### No. 7803.

Court of Civil Appeals of Texas. Austin.
April 5, 1933.

On Rehearing April 27, 1933.

Jno. B. Daniel, of Temple, and Critz & Woodward, of Coleman, for appellant.

Dibrell & Starnes, of Coleman, for appellee.

BAUGH, Justice.

Suit was by appellee to recover payments of interest alleged to be usurious and overpayments of principal, on two separate loans made by appellant and secured by deeds of trust on real estate in Coleman county, owned by appellee. The loans were for different sums, made on different dates, and matured differently, but the same plans, ratios, and interest rates prevailed in each, and for purposes of clarity and brevity we shall discuss the issue of usury as to the first loan, and as to the second only so far as the issues presented differ from those involved in the first.

The first loan and set of notes executed arose under the following facts: J. A. Stobaugh and wife arranged with W. E. Edgerton, a contractor in Coleman, to build them a house. The cost of the house was $1,205.35. Stobaugh executed on August 12, 1924, a me-

chanic's lien on the premises, and a note for $1,350, due in 60 days, bearing 10 per cent. interest from date, and payable to Edgerton. He in turn assigned same to Temple Trust Company. On the same date Stobaugh and wife executed to Temple Trust Company five notes or bonds for $100 each, due September 1, 1925, 1926, 1927, 1928, 1929; one for $250, due September 1, 1930; and one for $600, due September 1, 1934; all bearing 7 per cent. interest, payable semiannually, and secured by a deed of trust on the property, which provided for acceleration of maturity of all of said indebtedness in case of default in payment of any of said notes or of interest when due. The record discloses that all of said instruments were prepared by the Temple Trust Company, forwarded by it to its local representative at Coleman, all executed by the parties on the same day, and clearly disclose but a single transaction, whereby the Temple Trust Company made the loan to appellee to pay for the improvements on his property. It is not controverted that only $1,205.35 was paid to Stobaugh, and by him to Edgerton for that purpose, though the notes aggregated $1,350. Stobaugh testified that appellant charged him a 12 per cent. bonus for the loan. The first five notes with interest were paid by Stobaugh at or before their maturity; and in accordance with the contract provisions, and with the consent and acceptance of appellant, appellee paid on March 1, 1929, the $250 note, which matured on September 1, 1930; and on March 2, 1931, the $600 note, which did not mature until September 1, 1934.

Appellee alleged that the loan was usurious, claimed credit on the principal debt of all usurious interest paid up to within two years of filing of this suit, sought judgment for $382.45, alleged overpayment of principal, and also sought to recover double the amount of the usurious interest paid by him within the two years next preceding suit, alleged to be $207.65, or a penalty of $415.30. Appellant, in addition to general and special exceptions and a general denial, defended on the ground that it was an innocent purchaser for value from Edgerton, without notice of usury in the $1,350 note secured by a mechanic's and materialman's lien; plea of limitation; and a compromise and settlement in advance of maturity, whereby appellee waived excess payments made by him. Trial was to a jury on two special issues, in answer to which they found that Edgerton had, prior to the execution of such contracts, agreed with Stobaugh: (1) To erect said improvements for $1,205.35; and (2) that the Temple Trust Company knew in advance of making such loan and taking the assignment from Edgerton that $1,205.35 was the amount to be paid.

■ While a series of notes or bonds were executed, there was obviously but a single transaction and but one loan involved. This loan, was, we think, as a matter of law usurious in three respects. In the first place, if the loan had run for its full period, and been repaid according to its terms, appellee would have paid a total of $630 interest, and the principal of $1,350, or $1,980 in all. If he had repaid only the money actually borrowed, $1,205.35, with 10 per cent. interest per annum, in the manner and at the times provided in the notes themselves, his interest payments would have totaled $755.35, which added to the amount actually borrowed would have amounted to $1,960.70, or $19.30 less than the aggregate amount provided for in the contract, thus making the contract itself provide for more than 10 per cent. per annum, in contravention of the Constitution and the statutes.

■ In the second place, the deed of trust and notes aggregating $1,350 provided that in case of default in payment of any note at maturity, or of any installment of interest, the lender might declare all of said indebtedness due and enforce the collection of the full amount. In other words, had the borrower defaulted in such payment at the end of the first year, the Temple Trust Company could have, under the express terms of its contract, enforced the collection of $1,350, the principal of the notes, which was 12 per cent. more than the amount loaned by it, and in addition 7 per cent. interest on said $1,350. That is, it could have collected the full amount of money lent by it, together with more than 19 per cent. additional for the use thereof, at the end of the first year, had the borrower defaulted. Such were the terms of its contract clearly and unequivocally expressed. This character of contract was expressly condemned as usurious by the Supreme Court in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11. And it is immaterial that the note itself did not show that a less amount was actually loaned than the principal recited in the note; or that the difference be designated as a "bonus" or "commission," if in fact the lender receives it for lending his own money. Deming Inv. Co. v. Giddens (Tex. Civ. App.) 41 S. W.(2d) 260, 262. Its usurious character is determined by whether the lender exacts directly or indirectly, for the use or detention of the sum actually lent, more than 10 per cent. per annum on the sum actually furnished by him to the borrower.

■ In the third place, the appellee actually paid to appellant the full amount of the principal of said notes, at least $850 of which was paid to and accepted by appellant before maturity, together with the 7 per cent. interest thereon. Consequently appellee actually paid more than 10 per cent. per annum, for the use of the money actually borrowed by him for the time he had the use of it.

Contracts of this character, where the principal of the note is for greater sum than that

actually lent, whatever the subterfuge or cloak sought to be used to conceal interest charged in excess of the legal rate, have been frequently condemned as usurious. See Gilder v. Hearne, 79 Tex. 120, 14 S. W. 1031; International B. & L. Ass'n v. Biering, 86 Tex. 476, 25 S. W. 622, 26 S. W. 39; Rosetti v. Lozano, 96 Tex. 57, 70 S. W. 204; Yonack v. Emery (Tex. Com. App.) 13 S.W.(2d) 667, 672, 70 A. L. R. 684; So. Ind. Corp. v. Bolton (Tex. Civ. App.) 22 S.W.(2d) 495; Deming Ind. Co. v. Giddens, supra; Alston v. Greene (Tex. Civ. App.) 43 S.W.(2d) 478.

Said contract being usurious, whatever sums were paid thereunder as interest would by law be applied to the discharge of the principal debt. Int. B. & L. Ass'n v. Biering, supra; Cain v. Bonner, 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874; Cotton v. Cooper (Tex. Com. App.) 209 S. W. 135, 137; Yonack v. Emery, supra; Atwood v. Deming Inv. Co. (C. C. A.) 55 F.(2d) 180.

From the record, however, it is impossible to determine just how much interest had been paid on said notes prior to March 1, 1929, when the $250 note, which did not become due until September 1, 1930, was actually paid. The evidence discloses that at that time all five of the $100 notes, the last of which was not due until September 1, 1929, or six months thereafter, had already been paid; but does not show when any of said $100 notes had in fact been paid. Appellee, the only witness as to these facts, testified that he had paid all of said $100 notes with accrued interest thereon, on or before their maturity. There is no proof, however, as to when same were paid or how much interest thereon had been paid by appellee. Payment of principal in advance of maturity would, of course, reduce the amount of subsequent interest which would have accrued had such principal not been prematurely paid. Hence, it cannot be determined what amount appellee was entitled to have credited on his principal debt up to March 2, 1931, the date on which he paid the $600 note; and consequently how much, if any, of his principal debt then remained unpaid. The trial court found in his judgment that appellee was entitled to recover $382.45 overpayment of principal, and penalties amounting to $415.30 on this loan; but there is no evidence to sustain such finding on the $382.45 item.

The judgment as to penalty was obviously based on the payment by appellee of the last three semiannual payments of interest on the $600 note, aggregating $63; and adding to that the $144.65, the amount of the bonus which appellee was charged for the loan. These items aggregate $207.65, and if paid within two years prior to suit, appellee was entitled to recover as penalty double the amount so paid. There is no question as to the time of payment of the $63. Appellant insists, however, that even if the $144.65 item or bonus be treated as interest paid, it should be treated as paid at the time the loan was made in 1924, credited on the principal at that time, and not as paid in March, 1932, when the last note was paid off in full.

We do not sustain this contention. The transaction must be construed as if the contract were a written promise to pay only the $1,205.35 actually borrowed, and all other sums provided for therein are to be considered as interest. Appellee was entitled to a credit for, or recovery of, only the usurious interest actually paid by him, and where the penalty is not invoked within two years after payment, the law applies such payments on the principal. In the instant case appellee contracted in said notes to pay $100 each year for five years, and $250 the sixth year on the principal. Consequently, there was not included in these items the excess $144.65 which he agreed to pay. Meantime appellant was collecting 7 per cent. interest on that item up until his last payment, and limitation cannot we think begin to run against that item, which must be construed as usurious interest, until it was actually paid by appellee in his discharge of the $600 note. The rule as stated in 27 R. C. L. 279, is: "Since the inclusion of usurious interest as principal in notes does not constitute a payment of the interest, it does not start the running of the statute against a right of action to recover twice the amount of interest paid; but the usurious transaction from the date of which the statute begins to run is the time when the usurious interest is actually paid." And the excess, or bonus, was we think clearly carried over in this case into the last note, and was so treated by appellant itself in charging interest on it up to the maturity of that note.

Nor is there any merit in appellant's contention that it was merely the purchaser of the $1,350 note, secured by a mechanic's and materialman's lien, at a discount, executed by appellee to Edgerton; and that the other notes here involved were renewals and extensions of that debt. In the first place, we think the evidence conclusively shows that all of said instruments constituted but a single transaction whereby appellee secured the loan from appellant to pay Edgerton and was so intended. But if not, the only consideration for original $1,350 note due in 60 days was the $1,205.35, which made it likewise usurious as a matter of law; and it is now well settled that there can be no innocent purchaser of a usurious note, either before or after maturity. This because the statute itself makes it void as to interest, and its negotiation adds nothing to its validity. Gilder v. Hearne, supra; Maloney v. Eaheart, 81 Tex. 281, 16 S. W. 1030; State Bank of Chicago v. Holland, 103 Tex. 267, 126 S. W. 564; Washer v. Smyer, 109 Tex.

407, 211 S. W. 985, 4 A. L. R. 1320. As stated above, however, we think the evidence conclusively shows that the entire transaction, and the instruments executed in connection with it, was nothing more nor less than a single contract whereby the appellant lent to appellee the sum of $1,205.35; and that execution by appellee and wife to Edgerton of the $1,350 and mechanic's and materialman's lien, both of which were transferred to appellant, were merely steps taken at the instance of appellant in order to perfect their security on the property for the loan made to appellee. And in determining the question of usury, the transactions should be treated as if the dealings had been conducted exclusively between appellant and appellee.

The second loan made by appellant to appellee involved no materialman's and mechanic's lien, but was made direct and secured only by a deed of trust on appellee's property. It contained, however, the same features as the first loan, above discussed, including the 12 per cent. "bonus" feature, differing only as to amounts, due dates, and security. It was made on January 14, 1926, for $3,571, and eight notes executed aggregating $4,000 principal, seven for the sum of $300 each, due February 1, 1927, to 1933, inclusive, and one for $1,900, due February 1, 1936. This loan was, for the same reasons above discussed on the first loan, usurious; and limitation would not run, except as to collection of penalty, against the usurious interest paid so far as appellee was concerned. The borrower was entitled to have all payments of usurious interest made more than two years next prior to filing his suit credited upon the principal debt; and under article 5073, R. S., to recover, double the amount paid by him within such two years as interest if same were usurious. Appellee paid the first five of said notes with interest thereon prior to February 19, 1931, at which time he sold and conveyed the property involved to Fred Henderson who assumed the payment of the remaining $2,500 of said loan. Henderson is not a party to this suit. His rights in the premises are not here involved. Nor are we concerned with the balance of the principal which was due by appellee on this second loan at the time he sold the property. The sole issue as to this loan is the amount of appellee's recovery thereon against appellant.

The undisputed evidence shows that appellee paid to the appellant as interest on said loan on February 1, 1930, August 1, 1930, and February 1, 1931, before this suit was filed in September, 1931, sums aggregating $304.50. All the interest coupons evidencing such interest were returned by appellant to appellee, marked paid, except one for the sum of $66.50. There was evidence tending to show that the Temple Trust Company had assigned this interest coupon to a third party

and that same had been lost. But this was, we think, immaterial, for the reason that all these payments were made by appellee to appellant as interest on said loan and were accepted by appellant as such. In so far as appellee is concerned, therefore, it would be immaterial who held the interest certificates not surrendered to him. The judgment of the trial court in awarding the penalty on the second loan in the sum of $609 was therefore correct.

Appellee is not entitled, however, to any judgment for the $429 claimed by him, being the 12 per cent. bonus added in the notes to the amount of the actual loan, for the reason that there is nothing to show that he has paid such added sum.

Nor do we sustain appellant's contention that because the matters of usury and overpayment of principal pleaded as to the second loan were not submitted to the jury and no instructed verdict with reference thereto requested, the appellee abandoned his cause of action as to the second loan. While appellee did ask recovery of other items than the penalty on interest paid within the preceding two years, the court awarded him judgment for such penalty only, and there is no complaint as to this. Appellant cites us to cases under article 2190, R. S. 1925, holding that issues made by the pleadings must be submitted to the jury, even though there is no conflict in the evidence. This court has never construed the statute as requiring such submission. And because of such holdings the 42d Legislature (chapter 78, § 1) amended article 2190 (Vernon's Ann. Civ. St. art. 2190) so as to require submission of all "the issues made by the pleading and evidence." It is obvious, therefore, that no necessity existed for the submission of uncontroverted issues of fact, and that failure to request their submission was not an abandonment thereof. The evidence was uncontroverted that appellee had paid to appellant as interest on the second loan and within the preceding two years the sum of $304.50, and the court in his judgment expressly so found.

There is no merit in appellant's complaint that one of appellee's counsel used only two minutes to open the case (the trial court having allowed 30 minutes to the side for argument to the jury), leaving to the other counsel for appellee the chief argument in closing. The two issues submitted to the jury are set out above. Appellee himself was the only witness as to these facts, the other evidence being documentary. Appellant offered no evidence. While counsel's opening argument was perhaps not sufficient under ordinary circumstances to comply with the requirements of district court rule No. 36, we think it affirmatively appears that no injury was done to appellant in the instant case. Counsel did read the two issues to the

jury and stated to them that the testimony of appellee, the only witness, was uncontroverted on these issues. Clearly this was the only matter which appellant's counsel had to discuss on issues of fact, all other evidence being documentary and undisputed. Regardless of this, however, and of some apparently contradictory statements by appellee on cross-examination, we think the record conclusively shows as above stated, that appellant was in fact dealing throughout directly with appellee with full knowledge of the facts which the jury found; and that the trial court could have properly instructed a verdict thereon. Under such circumstances, no injury could have resulted to it from the argument complained of.

■ Lastly, appellant urges a provision common to both deeds of trust, as negativing any intention of appellant to charge, or obligation of appellee to pay, usurious interest on said loan, as follows: "Provided that if any tax assessed within the State of Texas against the bond or debt secured hereby, or the interest in said premises of the said Temple Trust Company, or its successors and assigns together with the interest paid or agreed to be paid on such bond or debt, shall exceed ten per centum per annum, then the grantors shall not pay such excess unless it shall have been first decided by the courts of last resort in this State, that the payment of such excess would not render this contract usurious, in which event grantors herein do covenant to pay the same on demand."

We think it is clear that this provision has no bearing on the issue of usury discussed. Preceding the above-quoted language was a provision obligating the borrower, in addition to paying principal, interest, etc., to pay insurance premiums and taxes on said properties. It is manifest, we think, that the foregoing provision meant, on the condition therein stipulated, that in case the 7 per cent. specified in the notes, plus the other charges imposed on the borrower, exceeded 10 per cent. on the principal named in the notes, i. e. the $1,350 and the $4,000, then that appellee should not be required to pay that excess, if the court of last resort held that he was not required to do so; and was not intended to apply to the sums actually lent to appellee. Obviously it did not purport to be in derogation of the more than 10 per cent. already carried into the face of the notes or bonds themselves; nor to be a limitation upon the accelerating maturity provisions in case of default. It does not, therefore, remove the usurious features of the contracts as written.

We have not undertaken to discuss all of the thirty propositions, some of which are not briefed, presented by appellant; but what we have said disposes of the issues raised. We conclude therefore that the judgment of the trial court as to all penalties should be affirmed. That is, his judgment for $609 as penalty on the second loan; and for $415.30 on the first loan. That portion of the judgment for $382.45 for overpayment of principal on the first loan is reversed and the cause remanded for trial on that issue. This necessitates, of course, a determination of the dates and amounts of interest paid more than two years before suit was filed, which should be applied on the remaining unpaid principal, and on which no penalty has been adjudged.

Affirmed in part; in part reversed and remanded.

On Appellee's Motion for Rehearing.

Appellee in a motion for rehearing, duly verified, prays the court to eliminate the item of $382.45 overpayment of principal as to which the judgment of the trial court was reversed, on the ground that he will be unable to make any further proof thereon upon another trial, and to reform and affirm the judgment of the trial court in all other respects. Accordingly, the judgment of the trial court is reformed so as to deny recovery by appellee against the Temple Trust Company of said sum of $382.45; and as so reformed, the judgment of the trial court is in all other respects affirmed. Costs of this appeal are taxed against the appellee.

Motion granted; judgment reformed and affirmed.