HARRY V. ADLESON ET UX. V. B. F. DITTMAR COMPANY.

No. 6842.   Decided March 27, 1935.
Rehearing overruled May 1, 1935.
(80 S. W., 2d Series, 939.)

*Duval West, Jr.,* of San Antonio, and *J. P. Ellis,* of San Benito, for plaintiffs in error.

The note, on its face for the principal sum of $6,000.00 payable in 60 monthly installments of $126.00 each, actually presented a loan of only $5,760.00, because the borrower was required to pay to the lender $240.00 when the loan was made as a "brokerage," "commission" or "bonus," and was therefore usurious. Rosetti v. Lozano, 96 Texas, 57, 70 S. W., 205; Yonack v. Emery, 13 S. W. (2d) 667 (Com. App.); Temple Trust Co. v. Stobaugh, 59 S. W. (2d) 916.

*Leo Brewer, A. N. Moursund, Jeffers & Gregg,* all of San Antonio, for defendant in error.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals.

Plaintiffs in error recovered judgment in district court against defendant in error for $3,852, representing double the amount of payments alleged to have been made as interest pursuant to a usurious contract. The Court of Civil Appeals reversed that judgment and adjudged that plaintiffs in error take nothing. 75 S. W. (2d) 1100.

The contract was evidenced by a promissory note executed by plaintiffs in error, payable to defendant in error, for the principal sum of $6,000 in sixty installments of $126 each, including interest, due monthly, with interest on each monthly installment from its due date at the rate of 10 per cent per annum, and by a deed of trust securing the note. Plaintiffs in error paid all of the monthly installments as they matured.

The meaning and effect of the provisions of the note requiring sixty monthly payments of $126 each, including interest, were that a part of each monthly payment represented interest accrued up to the date of its payment and the balance

of each payment represented principal, with the result that the sixty payments regularly made would discharge the principal and interest. The evidence is that the rate of interest agreed to be paid according to the terms of the note was 9.48 per cent per annum.

■ Defendant in error, however, through its agent Flynn, who represented it in making the loan, required plaintiffs in error to pay a so-called commission or brokerage in the sum of $240.00. This Flynn remitted to defendant in error. The trial court and the Court of Civil Appeals correctly held that such charge or deduction was but a·device for the collection of additional interest. Deming Investment Co. v. Giddens, 120 Texas, 9, 41 S. W. (2d) 260; Temple Trust Company v. Stobaugh, 59 S. W. (2d) 916 (Com. App.); 66 C. J., pp. 220-223; 27 R. C. L., pp. 238-239.

■ Although the note was executed for the principal sum of $6,000, the actual amount of the loan was but $5,760, because at the very time plaintiff in error Adleson received $6,000 from the agent Flynn he paid to Flynn as so-called commission $240. Defendant in error argues that the loan was in fact for $6,000, because the money was used to pay off an existing indebtedness owed by plaintiffs in error to contractors. The evidence is that the loan was closed through a bank in San Benito, that to it the agent Flynn gave a draft for $6,000 payable jointly to plaintiff in error Adleson and the contractors, and that out of the money represented by the draft the bank paid to Flynn $240, paid the contractors a balance due them, paid the bank a debt owed it by Adleson, and placed the small balance to Adleson's credit. Adleson therefore realized from the $6,000 for himself and in the payment of his debts but $5,760. But even if the evidence is to be interpreted as meaning that all of the $6,000 represented by the draft was used to pay Adleson's debt to the contractors, still as a part of the same transaction Adleson paid to Flynn, who drew the draft, $240, and thus he derived benefit from the proceeds of the draft only to the extent of $5,760. Stripped of the formalities of draft and checks, credits and charges, the transaction was that when the agent Flynn paid Adleson $6,000, Adleson took it in one hand and with the other hand gave back to Flynn $240. His note in the principal sum of $6,000 was given for a loan of but $5,760. In such case, for the purpose of testing the contract for usury, the real principal is the amount actually received

by the borrower. Rosetti v. Lozano, 96 Texas, 57, 70 S. W., 204; Yonack v. Emery (Com. App.), 13 S. W. (2d) 667; 70 A. L. R., 684; International Building & Loan Association v. Biering, 86 Texas, 476, 25 S. W., 622, 26 S. W., 39; Temple Trust Co. v. Stobaugh, 59 S. W. (2d) 916; Gilder v. Hearne, 79 Texas, 120, 14 S. W., 1031; 66 C. J., p. 211, sec. 133.

The rate of interest as agreed to be paid by the terms of the note in the making of sixty monthly payments including interest was, when calculated upon the principal sum of $5,760, 11.268 per cent. The contract therefore was usurious.

The Court of Civil Appeals, while holding the contract usurious, concluded that no interest at a greater rate than 10 per cent per annum was paid within two years before the suit was filed, and that therefore, plaintiffs in error were not entitled to recover penalties. It treated the $240 as a payment of interest made in the first year of the contract and considered $6,000 as the principal of the loan. In that view the rate of interest paid after the first year was less than 10 per cent per annum, but we think, as above indicated, that the real principal was $5,760, and on that principal the rate contracted to be paid and paid throughout the entire term of the contract was 11.268 per cent. Of the sixteen installments of $126 each which were paid by plaintiffs in error within two years before the suit was filed, a total of $154.89 was paid and received as interest. Plaintiffs in error are entitled to recover as penalties double that amount, that is, $309.78.

The trial court accepted, but the Court of Civil Appeals rejected, a theory vigorously presented by plaintiffs in error that since the contract was tainted with usury, all payments made, whether of interest or principal, were by law applied first to the extinguishment of the principal, and that all payments made thereafter became, or should be classified as, interest for the purpose of determining the amount recoverable as penalties. According to this theory the principal was extinguished by the first forty-six monthly payments, and the remaining fourteen payments aggregating (with a $36 overpayment in the forty-sixth installment) $1800 would serve as the basis for a judgment of $3600 as penalties. The Court of Civil Appeals regarded the theory as an attempted combination of the separate statutory penalties provided by Articles 5071 and 5073, and held that the provisions of the two statutes could not be so compounded as to create a cause of action where none existed under either provision separately.

The argument made by plaintiffs in error in support of this theory is that all payments of interest made were by law applied to the principal; that when they were so applied they "became metamorphosed into principal," and that because interest payments had thus been converted into principal and had extinguished it, all subsequent payments were for that reason and *ipso facto* converted into interest. The contention seems to be that because interest payments are converted into principal, payments of principal must be converted into interest. It is further said that when the principal, the only thing lawfully due, has been satisfied, payments thereafter made must necessarily be payments of interest. We can find no support for the theory either in the statutes or in sound principle.

■ In the first place, it is not entirely accurate to say, since the enactment of the penalty statute in 1892, that payments of interest on a contract affected with usury are by law applied to the principal. The borrower is entitled to have them so applied if he desires it, but he may prefer to sue for penalties under Article 5073 on account of such payments. He may within two years from the time the payments were made assert the right to such penalties, even though the principal or a part of it is unpaid, and may offset the penalties against the principal. Rossetti v. Lozano, 96 Texas, 57, 70 S. W., 204; Yonack v. Emery (Com. App.), 13 S. W. (2d) 667; 70 A. L. R., 684. Of course he is not entitled to resort to both remedies, that is, the application to the principal and the collection of penalties, on account of the same payments of interest. The usual practice is to claim the right to have interest payments made more than two years before the filing of the suit applied to the principal and to recover penalties for the interest payments made within the two-year period. In such practice one remedy is resorted to as to some payments and the other remedy as to others. When this is done, there is no inconsistency and no election is required. Sugg v. Smith, 205 S. W., 363 (application for writ of error refused); Temple Trust Co. v. Stobaugh, 59 S. W. (2d) 916 (application for writ of error dismissed).

■ Plaintiffs in error's contention is faulty in its assumption that payments of interest become payments of principal because they may be applied to the principal. They are still payments of interest, which may or may not be applied to the principal. They are payments of interest which, if they are applied to the principal will serve to discharge it in whole

or in part. If they were not payments of interest after they were made, then they could not serve as the basis for the recovery of penalties under Article 5073. In other words, if the theory is followed, payments of interest made when there is unpaid principal are immediately converted into principal, and since principal has been paid and not interest, no penalties can be recovered on account of such payments. If this were true, Rosetti v. Lozano, *supra,* and Yonack v. Emery, *supra,* would be wrong.

The correct construction of Article 5073 is that it authorizes the recovery of double the amount of those sums that within the two-year period have been paid upon the contract as interest. There can be no double recovery on account of payments made as principal, even though they may be made after the making of payments of principal and interest sufficient in amount to discharge the principal.

But even if it were true that the character of the payments, that is, whether they are to be regarded as principal or interest, should be determined by the method of their application, the last fourteen payments would not by this test be wholly payments of interest. They could not be applied to interest. The contract being void as to interest, no interest was ever due. Plaintiffs in error were entitled to have all of the first payments applied to principal because notwithstanding the usury there was an unpaid principal, to the payment of which they were bound. And so if it were conceded that the application of interest payments to the principal· converted them into payments of principal, it would not follow that the last fourteen payments of principal were converted into payments of interest. The payments last made, if the first forty-six payments are applied to the principal, represent in part payment of usurious interest and in part over-payment of principal.

■ Plaintiffs in error finally contend that if they are not entitled to recover double the amount of the last fourteen payments as penalties, they are at least entitled to a judgment for the amount of those payments as overpayment made by them under a misapprehension of their legal rights. It is not necessary to determine whether under proper pleadings recovery could be had for such overpayment, because no such case is pleaded. The suit is for penalties under Article 5073. The very first paragraph of the petition states in so many words that "this suit is instituted for the purpose of recovering penalties for interest paid by plaintiffs and received and

collected by defendants upon a usurious contract hereinafter set out." The facts stated in the body of the petition are alleged as the basis of the asserted right to recover as penalties double the amount of interest payments alleged to have been made and the particular prayer is for judgment for such penalties. The added prayer for general relief can not serve to embrace a cause of action not within the pleadings. See Jennings v. Texas Farm Mortgage Company (this day decided, post, 593, opinion by Judge Ryan) ; Milliken v. Smoot, 64 Texas, 171; Arrington v. McDaniel (Com. App.), 14 S. W. (2d) 1009.

The judgment of the Court of Civil Appeals is reversed; and the judgment of the district court is reformed so as to reduce the amount adjudged to plaintiffs in error against defendant in error from $3,852 to $309.78, the same to bear interest from September 28, 1933, at the rate of 6 per cent per annum, and as reformed, said judgment of the district court is affirmed. Costs incident to the appeal from the district court to the Court of Civil Appeals and costs in the Court of Civil Appeals are adjudged against plaintiffs in error. Costs in district court and costs in the Supreme Court are adjudged against defendant in error.

Opinion adopted by the Supreme Court, March 27, 1933.