## TEMPLE TRUST CO. et al. v. HANEY et ux.

### No. 8399.

Court of Civil Appeals of Texas. Austin.

March 18, 1937.

Rehearing Denied April 14, 1937.

J. .B. Daniel, of Temple, and Critz & Woodward, of Coleman, for appellants.

J. B. Dibrell, Jr., of Coleman, for appellees.

BAUGH, Justice.

This is a usury suit. Haney and wife sought to establish usury in three separate loans made to them by the Temple Trust Company. Trial was to the court without a jury, usury found as to two of said loans, but denied as to the other, and judgment rendered accordingly. The Temple Trust Company and its receiver have appealed; and the Haneys cross-assign error as to the loan on which recovery of usury was denied them.

All of the loans in question involve what may be designated as a bonus of 12 per cent. on the money borrowed. The ones in suit may be, as treated by the parties in their briefs, for convenience indicated by their numbers—3345, 4176, and 4174. Loan No. 3345 was made on May 15, 1924, for $2,000 to erect a residence in the city of Coleman, for which Haney and wife executed notes,

designated as "bond," aggregating $2,240, as follows: Notes 1 to 3 for $100 each; notes 4 to 7, inclusive, for $200 each; and note No. 8 for $1,140. These notes bore 7 per cent. interest payable semiannually on June 1st and December 1st of each year; the principal maturing on June 1, 1925, 1926, 1927, 1928, 1929, 1930, 1931, and 1934, respectively; provided that past-due interest bear interest at 10 per cent. provided for accelerated maturity of all notes at the option of the holder thereof in case of default in payment of principal or interest according to their terms. They were secured by a deed of trust on the property involved, which provided, in case of default, that "The principal and interest then accrued on said bond, and all advances made to or on account of the grantors herein, for taxes, assessments, and charges of every kind, shall at once become due and payable, and the moneys due on said bond and for advances as aforesaid, may be collected by a sale under this mortgage, or by a suit in the Courts of Bell County, etc." Under the power of sale granted the deed of trust provided that the proceeds therefrom be applied, among other items, "Third, to the payment of said bond, together with all interest thereon."

Treating the $240 bonus as interest exacted, as the trial court found it to be, and assuming that this amount was carried into and included in the $1,140 note, which it manifestly was, and which ran for a period of ten years, had the loan been repaid in the sums provided and at the maturity dates of the respective notes, there would not have been exacted interest in excess of 10 per cent. per annum over the entire period covered on the sum of money actually loaned, that is, the $2,000, except for the year 1934. This can be demonstrated as follows: Ten per cent. interest on $2,000 would, at the end of the first year, have yielded $200. The amount due on the 7 per cent. rate on $2,240 and paid by appellees, was $156.80. At the end of the first year, under the maturity of note No. 1 the principal was reduced $100, and the principal remaining would yield at 10 per cent. the sum of $190 interest; whereas, the amount due under the contract, that is, 7 per cent. on $2,140, would be $149.80. Applying this process of calculation, reducing the actual principal from year to year by the amount of principal maturing according to the terms of the contract, the $2,000 actually loaned would have yielded at 10 per cent. per annum over the period covered by the

contract a total interest charge of $1,400. (In making such computation we have disregarded the 15-day period between May 15, 1924, and June 1, 1924, as not changing the result, and for clarity and convenience have treated the contract as having been made on June 1, 1924. Whereas the total yield for the entire period of the contract, according to its terms, on $2,240 at 7 per cent. would be $1,148. If the $240 bonus, carried into the last note of the series, be added, the borrower would have actually paid in interest the total sum, had the contract been performed in full, of $1,388, or less than 10 per cent. per annum on the sum actually loaned for the entire period. Manifestly, therefore, under the contract as written, the borrower would not have paid in excess of 10 per cent. per annum on the amount actually loaned, during any year up to 1934, the date of the maturity of the last note into which was carried the $240 bonus. Had he paid the first seven notes at maturity he would have repaid only $1,100 of the principal, leaving $900 due in note No. 8. Ten per cent. on this during the last three years of the loan would have yielded $90 per annum, whereas up to the last year, 1934, he paid only $79.80, or 7 per cent. on $1,140, the face of the note. Had he paid this note at maturity, the $240 bonus (or interest) would have been included, plus the $79.80 interest coupon, or $319.80 interest for that year, on the remaining principal of $900 actually due, manifestly a usurious charge. This, however, he did not pay, and it cannot be said that he has actually paid interest in excess of 10 per cent. on the sum actually loaned during any year in which he had the use of it.

■ Under these facts and circumstances, the question of usury vel non in the contract is referable to the accelerated maturity provisions under the rule laid down in the case of Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S. W.(2d) 282, 39 S.W.(2d) 11, 84 A.L.R. 1269. Since the Shropshire Case was decided, numerous cases involving usury have been before the courts. The most common instances involve first and second deeds of trust, the second deed of trust usually given to secure payment of a separate and independent series of notes given for future or unearned interest, with varying provisions as to abatement of unearned interest where maturity of the principal is accelerated upon default. The rule adopted in such cases appears to be that where enforced collection of such unearned interest notes

is authorized in ambiguous or uncertain provisions under one construction of the contract; but negatived under other provisions, the court will construe such contracts in favor of their legality. But where the lender in unambiguous language discloses a clear intention, in case of default, to collect unearned interest, or interest in excess of 10 per cent. per annum in any event, and without abatement of any such excess, the contract is as a matter of law usurious. Shropshire Case, supra; Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942. A very able and extensive discussion of these two lines of cases is found in an opinion by Judge Leslie in Wellfare v. Realty Trust Co. (Tex.Civ. App.) 85 S.W.(2d) 1067 (writ ref.), to which we refer without further discussion here.

In the instant case the $240 excess interest was not provided for in separate or subordinate interest notes, but was manifestly added to the face of the last note as principal and treated as such. This was done apparently to conceal its excessiveness. The only interest provided for in the contract was the 7 per cent. rate, evidenced by interest coupons attached, and predicated on a principal charge of $240 in excess of the sum loaned. The intention was clear and unambiguous that the holder was to collect this $240 as principal, in any event, whether the notes ran to full maturity under their terms, or the maturity in full of their face value, including the extra $240, should be accelerated and declared due upon default.

The only provision in the contract which appellant urges as negativing any intention on its part to collect more than 10 per cent. is a provision in the deed of trust which imposed the duty on the borrower to pay, in addition to taxes, insurance, etc., on the properties mortgaged, also all taxes on the "bond" held and owned by the appellant, but subject only to the following limitation: " * * * provided that if any tax assessed within the State of Texas against the bond or debt secured hereby, or the interest in said premises of the said Temple Trust Company, or its successors and assigns together with the interest paid or agreed to be paid on such bond or debt, shall exceed ten per centum per annum, then the grantors shall not pay such excess unless it shall have been first decided by the courts of last resort in this State, that the payment of such excess would not render this contract usurious, in which event grantors herein do covenant to pay the same on demand."

Manifestly this proviso was not in any sense a limitation as to the face of the "bond" itself, nor as to the 7 per cent. rate of interest as applied thereto. It in no sense can be construed as reducing or abating any sum or sums expressly provided to be paid in the "bond" (notes), but obviously was intended to mean that if the borrowers had to pay as taxes on the notes held by the lender an amount which, added to the 7 per cent. interest coupons, would aggregate a sum in excess of 10 per cent. on the $2,240 fixed as the principal of the notes or "bond," then the borrower would not be compelled to pay the excess, if the courts of last resort decided such payment would be usurious. Otherwise they should pay that also. Clearly such proviso had no relation to the $240 excess written into the face of the bond as principal. Nor did the Supreme Court so hold in Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W. (2d) 935. This is the same construction placed upon this provision of the deed of trust, identical with the one here involved, in Temple Trust Co. v. Stobaugh (Tex. Civ.App.) 59 S.W.(2d) 916 (writ dis.), which was cited with approval in Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S. W.(2d) 939.

It follows, therefore, that because the contract disclosed an unequivocal intention by the lender to collect this $240 excess in any event, whether the loan ran its full period or its maturity be accelerated upon default, it was, under the express holding of the Supreme Court in the Shropshire Case, usurious. If at the end of the first year the borrower had defaulted, the appellant would, under the express and unambiguous terms of its contract, have exacted from the borrower through foreclosure the $2,240 named in its so-called "bond," together with 7 per cent. interest thereon amounting to $156.80, aggregating $2,396.80 or $396.80 for the use of the $2,000 loaned for a period of one year, manifestly a usurious contract.

The appellees sought to have all interest paid under said usurious contract more than two years prior to the filing of their suit applied as payments on the principal debt; and to recover as a penalty under article 5073, R.S.1925, double the amount of interest paid on said contract within two years of the filing of said suit,

and the amount of such penalty credited upon, or allowed as an offset against the remaining unpaid principal debt. And if the penalty be not allowed, then that all interest paid be credited as payment on the principal. The trial court found that appellees had, during such two-year period next preceding the filing of this suit, paid as interest on the loan the sum of $154.70, and allowed a penalty in double this sum to be offset against the balance of the principal of said loan then unpaid.

In this the trial court erred. Article 5073, R.S.1925, is a penal statute and must be strictly construed. Such penalty is allowed only by virtue of such statute. It authorizes a double recovery only where "a greater rate of interest than ten per cent shall have been received or collected upon any contract," etc. While the contract here involved was usurious as a matter of law for the reasons above stated, it was so because of the accelerating maturity provisions thereof, and not because the borrower had in fact paid, during the period it had run, interest on what he had actually borrowed, in excess of 10 per cent. per annum. The interest actually paid by appellee during the two years immediately prior to filing their suit was usurious because of the terms of the contract as above discussed, yet such sums so paid for these two years were not greater than 10 per cent. on the balance of the unpaid principal at such times. Consequently, the recovery of such penalty was not authorized. Jennings v. Texas Farm Mortgage Co., 124 Tex. 593, 80 S.W.(2d) 931; Simpson v. Grissom (Tex.Civ.App.) 38 S.W.(2d) 1106; 42 Tex.Jur. p. 967. If the borrowers had in fact paid interest in excess of 10 per cent. during such period, then the rule stated in Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939, would be applicable.

■ The loan being only for $2,000 instead of $2,240, for which amount notes were executed, on which the Haneys had paid on the principal the aggregate sum of $767.06 and total interest of $861.70, which they were entitled under now settled law to have credited as payments on the principal; and the Temple Trust Company having collected $40 in rents on the premises covered by the deed of trust, the Haneys were entitled to a credit of the aggregate of $1,668.76 on the principal, leaving a balance due by the Haneys on loan 3345 of $332.24, instead of $176.54, as found by the trial court. Crediting this with $40 rent collected by Temple Trust Company, left a balance due on this loan of $292.24.

■ Loan No. 4176, which the trial court also held usurious, was in the sum of $2,230, for which the Haneys executed notes aggregating the principal sum of $2,-500. On December 30, 1925, the Haneys executed a mechanic's and materialman's lien on the property to be improved, a note for $2,500, payable to one Manning, and due in 60 days. On the same day Manning executed an assignment thereof to the Temple Trust Company. All these instruments were obviously prepared in advance by the Temple Trust Company, as a letter of transmittal from said company to its agent at Coleman who negotiated the loan, dated November 28, 1925, described them as being inclosed and instructed said agent to procure their execution and return to the Temple Trust Company at once so that said company could prepare the series of notes and deed of trust here involved. This letter of transmittal designated the transaction as the "above loan" to be made by said company. Said instruments were executed promptly by the Haneys, returned to Temple; the deed of trust and new notes drawn and returned to Coleman where they were executed by the Haneys on December 7, 1925, and recorded on December 8th. Not until this was all accomplished did the Temple Trust Company remit any moneys on said loan. From these facts and circumstances, it is manifest, we think, that there was no bona fide purchase by the Temple Trust Company of a mechanic's lien note at a discount, as urged by appellees; but rather that the entire process was but a loan by the Temple Trust Company to Haney, and the various instruments required by the Temple Trust Company were but steps taken by it to perfect its security. Consequently, the whole proceeding constituted but one transaction whereby the Temple Trust Company loaned Haney $2,230 for which they required the execution by him of $2,500 in notes, and makes the instant case identical with the transactions involved in Temple Trust Co. v. Stobaugh (Tex.Civ.App.) 59 S.W.(2d) 916. The only difference between this loan No. 4176 and No. 3345 above discussed is as to dates and amounts. The other provisions in the notes and deed of trust were the same. Consequently loan No. 4176 was, for the same reasons, usurious. On loan No. 4176, however, it appears from the record that the Haneys actually paid more

than 10 per cent. per annum on the money actually borrowed during the time they had the use of it.

Loan No. 4176 was dated December 7, 1925. It was evidenced by nine notes, Nos. 1, 2, and 3 for $100 each, due December 1, 1926, 1927, and 1928; Nos. 4, 5, and 6 for $200 each, due December 1, 1929, 1930, and 1931; Nos. 7 and 8 for $300 each, due December 1, 1932, and 1933; and No. 9 for $1,000, due December 1, 1935. Haney paid notes 1, 2, and 3 as they matured, or $300 on the principal of his debt. Prior to December 1, 1929, he also paid $578.09 as interest. On January 4, 1930, he paid the Temple Trust Company $2,303.10, in full satisfaction of the balance on said loan. That is, from the time he received said money on December 1, 1925 (using that date instead of December 7th for convenience in calculation), up to January 4, 1930, he paid a total amount to the Temple Trust Company of $3,181.19. However, he borrowed and received only $2,230. The difference between these amounts, that is, $951.19, is what he paid for the use of that amount during that period. Applying the same method of calculation as used in loan No. 3345, the following results obtain: Ten per cent. on the $2,230 actually loaned up to December 1, 1926, the end of the first year, would be, of course, $223. At that time the principal was reduced $100 by payment of note No. 1. Ten per cent. on the balance—$2,130—for the year ending December 1, 1927, would be $213; for the year ending December 1, 1928, $203; for that ending December 1, 1929, $193; and on the remaining actual principal—$1,930—from December 1, 1929, up to January 4, 1930, $18.22. That is to say, interest on the unpaid actual principal for the period it was detained calculated at 10 per cent. would have amounted to $850.22. This added to the money actually received by the Haneys—$2,230—made an aggregate of $3,080.22, that is actual principal, plus 10 per cent. interest thereon. But the Haneys actually paid to Temple Trust Company the total sum during this period of $3,181.19, or $100.97 in excess of 10 per cent. per annum. Consequently they actually paid more than 10 per cent. on the money borrowed during the time they had the use of it. ·

■ As to this loan the trial court found that prior to January 4, 1930, Haney had paid, in addition to the $300 on principal, the sum of $578.09 as interest, which, being usurious, the law applied on the prin-

cipal, thus reducing the principal, at the time he paid off the loan on January 4, 1930, to $1,351.91; that of the $2,303.10 paid on that date, $373.10 was paid as interest, on which Haney was entitled to recover the penalty authorized by article 5073, R.S., or $746.20; that the remainder of said January 4th payment, i. e., $1,930, constituted an overpayment to the extent of $578.09 of the remaining principal due, which added to the $746.20 penalty allowed, authorized a recovery by Haney on this loan of $1,324.29, for which judgment was rendered. In this, we think, the trial court erred.

So far as the record shows, the payment in full of said loan on January 4, 1930, was entirely voluntary on the part of Haney and in advance of the maturity of the major portion of it. The loan was void only as to the interest. He was legally bound to repay the principal. Had Haney declined to pay off the loan as contracted for, he was clearly entitled to have applied to the principal all interest payments theretofore made and to have the principal reduced to that extent; and this without regard to when such payments were made. 42 Tex.Jur., § 55, p. 951, and numerous cases there cited. But he did not exercise his right to do this. He performed his contract in full, both as to the principal notes, which he paid as such, and the interest notes, which he paid as such. In doing so he repaid between December 1, 1926, and January 4, 1930, the entire debt he owed—$2,230—and in addition thereto total interest of $951.19, of which amount, according to the pleadings and the findings of the trial court, $578.09 was paid on or before June 1, 1929, more than two years before this suit was filed on September 19, 1931.

■ As stated in Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939, 941, "It is not entirely accurate to say, since the enactment of the penalty statute in 1892, that payments of interest on a contract affected with usury are by law applied to the principal. The borrower is entitled to have them so applied if he desires it, but he may prefer to sue for penalties under article 5073 on account of such payments." The law does not automatically convert payments of usurious interest into payments of principal, but merely gives the borrower the right to have them so applied. And where the borrower does not exercise that right, but voluntarily repays the principal as such, and pays interest as such which is usurious, after he has done so, whatever cause of action he has remaining, and whatever recov-

ery he may be entitled to, must rest upon and be referable to the usurious interest paid; and not upon what he could have done had he not repaid the principal of his debt. He cannot treat that which was paid only as interest as a payment of principal, where· he has already repaid the principal, and recover it back as an overpayment of principal. Adleson v. B. F. Dittmar Co., supra. And where, as here, he has voluntarily repaid, as principal, all of the principal sum he owed, without seeking to exercise his right to have the usurious interest theretofore paid applied in reducing the principal sum due, he is thereafter confined in a suit for recovery, to his rights predicated only on the excessive interest paid. And whatever recovery, absent any fraud or mistake, neither of which is pleaded here, he may be entitled to must be predicated upon the usurious interest so paid and not sought by him in due time to have applied on unpaid principal.

■ Consequently a recovery by him of usurious interest paid more than two years before suit was filed, was subject to appellants' plea of limitation. He could, of course, have recovered by suit filed within two years after payment of interest in excess of 10 per cent., a penalty of double the amount so paid, whether the balance of the principal were then due and unpaid or not, and could have had such penalty offset against the unpaid principal. Adleson v. B. F. Dittmar Co., supra; 42 Tex.Jur. p. 964, and cases cited. But where no principal remains, but is extinguished by his voluntary payment of it, there remains nothing to which to apply usurious interest. Nor did he over pay the principal due as such in his January 4, 1930, payment. He merely repaid to the lender the balance of what he had borrowed; and the remainder of such payment was made by him as interest and so received by the lender. Consequently his rights must then be predicated upon a recovery of the usurious interest paid.

■ As to loan 4176, payments made more than two years prior to the filing of this suit were barred. Not so, however, as to the $373.10 interest paid on January 4, 1930. As to this Haney was clearly entitled to invoke the penalty and recover double that amount; and as to this the trial court properly so adjudged.

■ Loan No. 4174 was identical in all respects with loan No. 4176, except as to the property on which the deed of trust was executed. After the execution thereof and before any payments became due, Haney conveyed the property to one Ranney, in consideration of the execution by Ranney of two vendor's lien notes for $1,100, which were subsequently paid to Haney, and the assumption of the payment by Ranney of the debt due to the Temple Trust Company. Ranney paid to the Temple Trust Company $500 on the principal of said loan and $725.09 as interest, and being unable to continue further payments thereon, reconveyed the property to Haney on February 3, 1931, in consideration of the assumption by Haney of all taxes on the property and "the indebtedness due the Temple Trust Co." The trial court held, as to this loan, that Haney was not entitled to assert usury. Haney excepted to this holding and gave notice of appeal. He has not, however, filed any appeal bond nor prosecuted any ·appeal, but asserts error here only by cross assignment of error.

We have concluded that such cross-assignment cannot be considered, and therefore pretermit any discussion of the merits of the questions so raised, or whether or not Haney was entitled to have allowed the usury asserted. The three loans above enumerated were separate and distinct transactions, each independent of the other. They could have been litigated in separate and distinct suits. Though all were included in a single suit, they were separately pleaded by the plaintiffs, separately considered by the court on the trial, and separately adjudicated in the court's judgment. None of them had any relation to either of the others. As to two of them the court's judgment was in favor of the plaintiffs. As to the other it was in favor of the defendant and against the plaintiffs. The defendant appealed only as to the judgment on the two loans against it, but makes no complaint as to the other wherein judgment ran in its favor. As to this, the judgment being against the plaintiffs, it was incumbent upon them, if they are to have it reviewed, to have prosecuted an appeal. This they have not done, and cannot have same reviewed by cross-assignment of error to an appeal by the defendant on other separate and distinct causes of action, in no way related to loan No. 4174. This question was expressly decided in Hunt v. Garrett (Tex.Civ.App.) 275 S.W. 96, which holding, though the case was reversed on other grounds, was subsequently approved by the Commission of Appeals in 283 S.W. 489, 491; and again in Detroit Fid. & Surety Co. v. State, 124 Tex. 145, 76 S.W.(2d) 492, 493. Consequently

appellees' cross-assignment of error cannot be considered.

■■■ The only remaining contention complains of the portion of the judgment of the trial court authorizing issuance of execution in favor of the Haneys against Temple Trust Company, and H. C. Glenn, receiver thereof, for all costs incurred in the trial court. It is agreed that H. C. Glenn was appointed receiver of all the assets of the Temple Trust Company on March 10, 1933, by the United States District Court for the Western District of Texas, in a suit pending against it in that court; that he qualified as such on March 11, 1933; and that such receivership is still pending. Consequently no execution would lie against property in his hands without the authority and consent of the court in which the receivership was then pending. Ellis v. Water Co., 86 Tex. 109, 114, 23 S.W. 858, 861; Pruett v. Fortenberry (Tex.Civ.App.) 254 S.W. 592; 36 Tex.Jur., § 99, p. 201, and numerous cases thereunder.

That portion of the judgment authorizing execution to issue against the receiver is therefore set aside. The judgment, for the reasons above stated, is also reformed by reducing the amount of the recovery in favor of appellees against appellants from $1,185.35 to $453.96. In all other respects, the judgment of the trial court is affirmed.

On Appellants' Motion for Rehearing.

Appellants urge in their motion for rehearing, among other things, that our holding in the instant case is in conflict with the holdings of numerous cited cases, particularly Eubanks v. Simpson (Tex.Civ. App.) 90 S.W.(2d) 291; Southern States Mortgage Co. v. Lykes (Tex.Civ.App.) 85 S.W.(2d) 780; and Temple Trust Co. v. Cooper (Tex.Civ.App.) 96 S.W.(2d) 408.

Eubanks v. Simpson involved a note payable in 120 monthly installments, wherein $70 was deducted from the face of the loan for a "commission and title fee." The court held that according to the face of the contract the interest rate did not exceed 10 per cent. per annum. Manifestly that case is not analogous to the case before us.

The case of Southern States Mortgage Co. v. Lykes, as in the case of Walker v. Temple Trust Company (Tex.Civ.App.) 60 S.W.(2d) 826, affirmed in 124 Tex. 575, 80 S.W.(2d) 935, involved two deeds of trust and two sets of notes, the second series and deed of trust given expressly as a part of the interest to accrue on the principal note. The Lykes Case was ruled by the Walker Case.

In Temple Trust Company v. Cooper, supra, the same provision in the deed of trust was involved as here, and which the appellants urge removes from the contract any taint of usury. This provision Judge Hall of the Amarillo court construed as bringing that case within the construction of the contract involved in Walker v. Temple Trust Company. It is to be noted that Associate Justices Martin and Jackson merely concurred in the disposition of this case as to Glenn.

That there is conflict between Judge Hall's holding on this proviso of the contract, our holding in the instant case, and our holding in Temple Trust Co. v. Stobaugh, 59 S.W.(2d) 916, is, we think, manifest. In the Stobaugh Case we expressly held that the proviso in question did not remove the usury created by the accelerating maturity provisions of the contract; whereas, Judge Hall held that the identical provision did remove such taint of usury. The Supreme Court dismissed applications for writ of error in each of these two cases, though they are manifestly in conflict.

In the Cooper Case, Judge Hall predicated his holding upon the holding of the Supreme Court in Walker v. Temple Trust Company. While this same provision was contained in the deed of trust in the Walker Case and quoted by Judge German in his opinion, careful reading of that case shows that an entirely different character of transaction was involved from the one involved in the instant case. In the Walker Case two deeds of trust and two sets of notes were executed. The only basis for the contention that usury was involved in that transaction depended upon the acceleration provision with reference to the second series of notes, given expressly for unmatured interest on the principal note. While the proviso relied upon in the instant case was set out by Judge German in his opinion, along with other provisions of the notes and deeds of trust, a careful analysis of that opinion clearly discloses, we think, that the conclusion therein reached that the contract was not usurious was predicated upon other provisions and circumstances than the proviso here involved.

On the other hand, we expressly held that the provision where only one series of notes and deed of trust is executed, and no second series of interest notes is involv-

ed, but the excess is written into the face of the principal note as a part thereof, and a clear intention disclosed to collect this excess in any event, this so-called saving provision does not apply. This was our express holding in the Stobaugh Case. While application for writ of error was dismissed in the Stobaugh Case, that case has been cited with approval on the other issues involved, in Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.(2d) 939, in an opinion adopted by the Supreme Court. We take it, therefore, that the Stobaugh Case announced the correct rule with reference to such provision, and that our construction has the approval of the Supreme Court.

The other questions raised on the motion for rehearing have, we think, been fully disposed of in the main opinion, and need not be further discussed here.

For the reasons stated, the motion is in all things overruled.