### KELTNER et ux. v. GLENN.
### No. 8615.

Court of Civil Appeals of Texas. Austin.
April 17, 1939.

Rehearing Denied June 28, 1939.

Nelson & Brown, of Lubbock, for plaintiffs in error.

Critz & Woodward, of Coleman, and J. B. Daniel, of Temple, for defendant in error.

McCLENDON, Chief Justice.

This is a usury case. It was before this court upon a former appeal. See 81 S.W.2d 1051. The controversy had its inception in the following four instruments all executed simultaneously on April 26, 1924, and prepared by and drawn upon forms of Temple Trust Company of which appellee Glenn is receiver.

1. An application to the Trust Company upon a form headed, "Application for City Loan," by the Keltners (C. B. and wife and Jim T.) "for a loan for 10 years of $14,000" to be secured by lien upon a lot in Tahoka, reciting that the improvements on the lot were worth $29,000, that it was incumbered with a mechanic's lien in favor of H. C. McCurry for $14,000; and that the purpose of the loan was to take up and extend this lien.

2. A promissory note executed by the Keltners in favor of McCurry for $14,000 due 120 days after date.

3. A mechanic's and contract lien securing the $14,000 note executed by the Keltners in favor of McCurry, whereby McCurry agreed to furnish all labor and material for and to construct upon the Tahoka lot a two-story building in 120 days according to plans and specifications "filed with the Temple Trust Company." The total consideration for the building was not given; but it was stated that the note was "in part consideration of the construction of said improvements and furnishing the labor and material therefor." The instrument bound the Keltners, if required by McCurry, his heirs or assigns, "upon completion of said improvements, or at any time thereafter to execute a deed of trust, with the usual provisions as to power of sale to further secure said indebtedness."

4. A transfer of said note and lien by McCurry to the Trust Company for $12,600.

In extension and renewal of the $14,000 note the Keltners, on May 15, 1924, executed a trust deed upon the Tahoka lot securing notes in favor of the Trust Company, aggregating $14,000, bearing 7% interest and maturing in one to ten years. Later Jim T. Keltner conveyed his interest in the property to C. B. Keltner, who assumed payment of the indebtedness. December 1, 1931, C. B. Keltner and wife, in extension and renewal of unpaid balance of this loan, executed to the Trust Company an $8,300 7% note payable in monthly installments of $96.37, and a trust deed upon the Tahoka lot securing it. The suit was upon this note and lien against C. B. Keltner and wife.

In the first trial upon a directed verdict, judgment was rendered in favor of appellee for the full amount of the note, with foreclosure of the lien and order of sale. The appeal was upon cost bond without supersedeas; pending which appellee bought in the property under order of sale and dispossessed appellants. By amended pleadings after remand of the cause, appellants reconvened for their damages resulting from this dispossession, and appellee sought reimbursement for taxes on the property paid by him under provisions of the trust deed.

Under special issue jury findings to the effect that the transfer of the $14,000 note and lien by McCurry to the Trust Company "was a bona fide sale of said note and contract at a discount of $1,400"; that the rental value of the property was $130 per month; and that appellants' damage resulting from the dispossession was $120; the

court awarded judgment for appellee as follows: On the note (principal $8,203.82, interest $2563.08, attorney's fees $1,076.69) $11,843.59, this sum to bear interest at 7% per annum; for taxes paid by appellee (principal $3,803.46, interest $158.31, attorney's fees $396.17) $4,357.94, less a credit for rental value of property and damages of $2,993, leaving a net balance of $1,364.94, to bear interest at 10% per annum; and for foreclosure of the trust deed lien.

■ The controlling question the appeal presents is whether the evidence supports the jury finding to the effect that the transaction, evidenced by the four instruments of April 26, 1924, constituted a bona fide purchase by the Trust Company from McCurry of the $14,000 for the sum of $12,600. We have concluded that the evidence does not support such finding, but that on the contrary it conclusively shows that the entire transaction constituted a loan by the Trust Company to the Keltners of $12,600; that the $1,400 added to the principal of the note must be treated as interest; and that so considered the note was usurious in its inception, the transaction being on all fours with that in Temple Trust Company v. Haney, Tex.Civ.App., 103 S.W.2d 1035, affirmed Tex.Sup., 107 S.W.2d 368, rehearing opinion, Tex.Sup., 126 S.W.2d 950. We make the following statement of the pertinent evidence, viewed most strongly in support of the jury finding:

February 28, 1924, C. B. and Jim T. Keltner (then living in Oklahoma) purchased the Tahoka lot. C. B. "came to Tahoka March 4, 1924, and began preparation to build the hotel in question with the intention of operating it as a hotel and using it as a residence for himself and family when it was completed sufficiently for them to occupy." Duggan was the representative in West Texas for the Trust Company in making real estate loans, with headquarters at Lubbock. He had been such agent at Lubbock since 1917. According to his testimony, C. B. and Jim T. called at his office a few days before April 26, 1924. "We was making loans all over that territory, and they came in and said they were moving from Oklahoma, and wanted to borrow some money to build a hotel at Tahoka; they told me about what the hotel would cost ($28,000), and had bought their lots and what they had cost, and I told them I would look into it and see what I could do."

He then advised them that a mechanic's lien would have to be given. In a day or

two he went to Tahoka and inspected the lot, and on April 26, 1924, C. B. and Jim T. came to his office with McCurry and the four instruments were executed, with the exception of Mrs. Keltner's signature which was affixed and her acknowledgment taken in Oklahoma on May 28, 1924. The following is from Duggan's testimony on cross examination:

"Q. Now, Mr. Duggan, when Mr. Keltner and his nephew, Jim Keltner first came to you, they told you that they wanted a loan? A. Yes, sir.

"Q. They first told you they wanted ten thousand dollars? A. I don't remember about that.

"Q. And then later decided they wanted fourteen thousand dollars? A. Possibly that's right.

"Q. You explained to them in detail about how you would make the loan? A. Yes, sir.

"Q. And they told you about them building the house themselves? A. No, sir.

"Q. Well, what did they say about it? A. They said they wanted to build this place, and I discovered very soon it was one of homestead, and the only way I could make the loan was under a mechanic's lien contract. I told him he would have to have a valid mechanic's lien contract.

"Q: You suggested to him that he should have that? A. No, I told him.

"Q. There is not very much difference between us on that that was a suggestion, and that you would have to have that before you would make a loan? A. Yes, sir.

"Q. And the reason you would have to do that was because he had declared then and there that it was going to be his homestead? A. Yes, sir.

"Q. Otherwise it wouldn't have made any difference about that, there would have been no necessity for a mechanic's lien? A. No, sir.

"Q. And you explained to him about the way and manner in which you made a loan? A. Yes, sir.

"Q. And you explained to him that in most all cases where you made a city loan, that you deducted ten per cent from the face of the note—that was your rule and had been for sometime? A. Yes, sir.

"Q. And you explained to him that he would make an application for fourteen thousand dollars but that he would only get $12,600.00? A. Yes, sir, that's what we would pay the contractor for the note.

"Q. And you told him that was the policy of your company to make loans that way? A. Yes, sir.

"Q. And that you would in this instance make him the loan for seven per cent and that you would withhold ten per cent of the face of the loan? A. We told him we would buy that note from the contractor for $12,600.00.

"Q. In other words, you wouldn't have made him a loan on that property without retaining ten per cent—that was your custom and that was your plan that you had been working on then a few years? A. Yes, sir.

"Q. You had made many many loans just like this where you had deducted ten per cent to start with? A. Not always.

"Q. That was usually ten per cent? A. Yes.

"Q. Some of them you didn't hardly take that much? A. Most of them we did.

"Q. He, of course, thoroughly understood that and understood he wouldn't get but fourteen thousand dollars with a fourteen hundred dollar deduction? A. I am sure he did.

"Q. And you wouldn't have bought this note off McCurry except for the fact that you had it agreed to make the loan and take it off the loan? A. I am sure not.

"Q. You didn't buy notes except where they were going to be secured on long time on real estate? A. Yes, sir.

"Q. And the making of the mechanic's lien contract and this note and the application for the loan was all one and the same transaction? A. Yes, sir.

"Q. All done at the same time? A. Same time.

"Q. And for the same purpose? A. Yes, sir."

Appellants' evidence was to the effect that McCurry was not in fact a contractor but only a laborer on the job and that his name was used to satisfy the formalities of a valid mechanic's lien. Duggan testified he knew nothing of this; "he signed up our mechanic's lien contract and I thought he was the contractor." McCurry testified that he told Duggan at the time he signed the papers that he did not want to be liable in any way. Duggan testified: "I didn't hear anything like that."

May 15, 1924, C. B., Jim T., and McCurry made affidavit to the effect that no work had been done and no material placed on the lot in question prior to April 26, 1924, "on which premises the said contractor did that day contract to erect a modern two-story and tile hotel building according to plans and specifications signed by the parties hereto, and Carroll E. Keltner, wife of C. B. Keltner and filed with Temple Trust Company for the said Jim T. Keltner, C. B. Keltner and Carroll E. Keltner under a mechanic's and materialman's lien. That the mechanic's lien note for fourteen thousand dollars ($14,000.00) on said property that day given to H. C. McCurry and by him sold to Temple Trust Company is secured by a just and valid first lien on said property."

November 10, 1924, the Keltners made affidavit containing the following:

"The said owners have accepted the house, built for them by said contractor, work having been done according to plans and specifications, on lot No. 1 in Block 7, original town of Tahoka, Texas.

"The said H. C. McCurry, the contractor, states under his oath that all bills of every character or kind for labor and material have been paid and the three parties jointly and severally solemnly swear that there are no liens or claims of any character or kind against said property except the loan of Fourteen Thousand Dollars ($14,000.00) held by Temple Trust Company, which is a just and valid first lien."

November 12, 1924, the Trust Company paid the $12,600 by two checks drawn by Duggan, Agt., on the Guaranty State Bank of Tahoka, one in favor of the Bank for $9,000, the other in favor of McCurry for $3,600.

■ Whether McCurry was in fact a bona fide contractor to construct the building is not material to the issue of usury. It is difficult to conceive of a responsible contractor executing a written contract to construct a hotel building estimated to cost some $28,000 without incorporating in the instrument the price he was to receive. The instrument was drawn by the Trust Company and it is quite apparent that its only purpose was to comply with the legal formalities of a valid mechanic's lien to secure the $14,000 note. For our present purposes we accept Duggan's version of the transaction in so far as it fixed a valid lien on the property to secure the obligation of the note.

It seems clear to us that the transaction cannot be properly characterized other than as a loan to the Keltners and not a bona fide obligation of theirs to McCurry upon the note and its sale to the Trust Company. The application for the loan was made by the Keltners to the Trust Company and was to be for ten years. The $14,000 note due in 120 days was manifestly only a temporary form of the loan, pending its final execution in accordance with the terms of the loan application. Duggan's testimony clearly shows that this was the effect of the transaction. All negotiations prior to April 26, 1924, were between him and the Keltners alone. The loan was to be made to them, the note was to be for $14,000, but they were to get only $12,600. The form of the loan was to be such as would evidence a valid mechanic's lien. We are unable to give the transaction any other interpretation. The affidavits quoted above do not militate against this conclusion. They merely show that nothing was done nor furnished concerning the building prior to April 26, 1924, that the building had been constructed according to contract and accepted by the owners, and that all labor and material had been paid for and there were no liens on the property—facts essential to the validity of a mechanic's lien upon homestead property.

The record shows that the Keltners have paid on the indebtedness $11,428.74 which credited upon the $12,600 loan would leave a balance of $1,171.26, plus $117.12 attorney's fees, or in all an obligation of $1,288.38.

■ Appellants contend that the usurious character of the note precludes appellee from recovering interest upon the amount he or the Trust Company had paid in taxes upon the property. We do not concur in this view. The tax items are clearly severable from the obligation of the note. There was no obligation on the part of the Trust Company to pay them, such payments being purely optional. This provision in the trust deed was purely for the purpose of protecting the property, and the payment and obligation of reimbursement were not tainted with usury.

We think the record shows that a valid lien was fixed upon the property before any homestead rights attached. We do not understand from appellants' brief that they insist upon their claim of homestead, if the note is held usurious and all payments made by them are credited upon the principal. It

**456**

is not necessary, therefore, to further consider this issue.

That portion of the court's judgment which awards appellee $11,843.59 with 7% interest per annum thereon is reformed so as to provide that appellee recover $1,288.38, together with 6% interest per annum thereon from the date of the trial court's judgment, and as so reformed that portion of the judgment is affirmed. In all other respects the trial court's judgment is affirmed. Costs of appeal are assessed against appellee.

Reformed and affirmed.